## MOORE'S EX'RS. *vs.* MOORE'S DISTRIBUTEES.

1. A testator, after devising a very large estate, both real and personal, to his widow and children, directs that each of the children shall receive out of it a good education, and that it shall be divided when the oldest son attains the age of twenty-one, or the oldest daughter the age of eighteen and marries, unless the widow should marry, or desire an earlier division, in either of which events her share is to be set apart to her. Until the division takes place, the family residence

is to be kept up for the use of the widow and children, and "the family expenses, economically made," are to be paid by the executors out of the "joint funds" of the estate. The testator further directs that his executors shall pay fifty dollars annually to the church, of which he was a member, so long as the estate remains undivided, and "a joint stock" for the use of the family. *Held*—

1. That it was not the intention of the testator that the executors should keep a separate account against the widow and children for their respective expenses, but that the entire expenses of the domestic establishment should be a charge upon the common, or joint fund.

2. That a reasonable construction should be given to the will, in ascertaining what expenses fall within its provisions, as expenses "economicaily made," and that in construing it, the circumstances under which it was made, the state of the property, and the con-dition of the family should all be considered.

3. That so construing it, the reasonable expenses of the widow, in visiting with her youngest daughter and servant, the eldest daughter, then at school in another State, for the purpose of looking to her education, might well be regarded as a proper charge against the estate in favor of the executors.

ERROR to the Orphans' Court of Madison.

HOPKINS, for the plaintiffs in error:

The intention of the testator appears clearly from the will that his estate should be a joint stock, for the use of his family, including the widow, until a division should be made. This intention is expressed in the clause in which the sum of fifty dollars per annum is given to the Methodist church. This annuity was to be a charge on the whole estate, as it had been in effect, while the whole estate belonged to him. He made it such a charge as the consequence of making all his property a joint stock for the use of his family. If this sum was made a charge on the whole estate because the estate was a joint stock, any other expenditure properly incurred for the use of any member of the family must be such a charge also, because the estate is a joint stock for the use of the family. It must be such a charge as it would have been in the testator's life-time, limited in its effect to the testator's estate, and not affecting immediately the share of the wife, or of a child. The testator explained in this clause his own meaning in leaving his estate as a joint stock for the use of his family—that what was properly expended for the

use of any member should be a charge not on the separate interest of such member, but on the whole estate as such expenditures were in his life-time.   He directed the executors to keep up the family establishment he described in the will, for the use of the widow and the children, and then added, " and the family expenses, economically made, shall be paid by my executors out of the joint funds of my estate until a division takes place."   The cost of supporting one of the young children would be much less than to support Mrs. Moore, or an older child, yet no account can be taken of such differences, and the aggregate costs must be charged against the whole estate. The direction given to pay family expenses applies to any expenses incurred by any member of the family, suitable to the fortune, age, and social position of such member.   The privilege given to Mrs. Moore by the will, to permit her share to remain in joint stock, prevents, while the privilege is exercised, anything from being drawn and used by her as separate property.   One or more of the children might have a capacity and taste for the most ornamental and costly branches of education.   The executors have a discretionary power to cultivate such capacity and gratify such taste.   To improve such child in these branches, the executors might send it abroad to school and to travel.   The result might be that the lawful expenditures made by the executors for the education and accomplishment of one child might amount to the aggregate cost of the education of the other three, yet the highest cost would not be unsuitable for the social position and large fortune of one child, while the education provided for each of the other three might be as good as either was capable of receiving.   The discretion by which the executors would be guided in such a case in relation to each of the children would be lawful, and the cost of the education of each would be a charge on the whole estate as it would if the same expenditures had been made by the father in his life-time.   The expenditure of $3,723, made by a mother for the first time, and four years after the death of her husband, in making a visit to an absent daughter, not only to enjoy for a time the pleasure of her society, but to change her school if necessary, was not unreasonable either in its object or amount.   She is entitled on a division to one fifth of an annual income of forty-five thousand dollars.   The comparatively tri-

Moore's Ex'rs v. Moore's Dist's.

fling sum in dispute she expended not only upon herself, but her two daughters.—Kate, whom she took with her from home, and Harriet, who also travelled with her mother, after she was removed from one school, and before she was placed at the other. Any expenditures made by Mrs. Moore for herself, her two daughters, and her servant, if they had all been at home, must have been paid by the executors. They would have been family expenses most clearly, and the expenditures as actually made were family expenses incurred from home instead of at Huntsville. Suppose the annual expenses of Mrs. Moore and her family, at the residence in Huntsville, were double the amount of the disputed charges, and the executors were to pay them, upon what principle could a court disallow them? Many prudent men, with not half the income of this estate, annually expend much more. Are the executors to prescribe what the family shall wear, eat, and drink, and to prohibit them from travelling even to preserve or regain health, when the mother, the head of the family, may think it proper to do so? The money was expended for the use of three out of five members of the white family, and one servant. Upon what principle is the charge of a sufficient sum to remove Harriet from one school to another denied, and enough more to defray the expenses of the mother, who went for the purpose, and was the most proper person to accompany her daughter on the journey? If an agent could be employed and paid to accompany Harriet to school, surely the mother's expenses may be charged against the estate for rendering similar services? Much of the money was doubtless expended in the purchase of clothes for the mother, the two daughters and the servant, and similar expenses must have been incurred if the trip had not been made. The estate is properly chargeable, not only with the cost of the removal of Harriet from one school to another, the amount of Mrs. Moore's expenses in accompanying her daughter, and the cost of the clothes which have been referred to, but is chargeable, also, for the whole amount supplied by the executors to Mrs. Moore, which was merely a suitable expenditure for a woman of her high social position, with an undivided interest in a large joint stock estate, and made principally with a view to the improvement of her two daughters.

No counsel for the defendants.

CHILTON, J.—Upon the annual settlement of the estate of Dr. David Moore, made by his executors with the Orphans' Court of Madison county, for the year 1849, they claimed a credit for several sums paid by them to Mrs. Martha L. Moore, the widow of the testator, amounting in the aggregate to the sum of three thousand seven hundred and twenty-three dollars.

It appears by a bill of exceptions sealed upon the trial, that the testator's daughter Harriet was at school in New Rochelle, in the State of New York, and that Mrs. Moore desired to visit her said daughter, for the purpose of looking to her interest, and of changing her location, if circumstances should render it necessary ; that she did make the visit, taking with her another daughter, and a servant, and it appears she removed Harriet from New Rochelle to Richmond, in the State of Virginia. This was in the summer of 1849. The sum above stated was paid to Mrs. Moore as the expenses of the trip. The annual income of the estate was shown to be not less than forty-five thousand dollars, and the executors produced and read the will of Dr. Moore, which had been duly admitted to probate in said court.

By the will, the testator bequeathed his estate, in equal portions, to his wife and children. He directs that each of his children should receive out of it a good education, and provides for a division of the estate, when the oldest male child attains the age of twenty-one years, or his oldest female child shall attain the age of eighteen and marry. If the widow should marry, her share is to be set apart, and the balance to remain together, but if she prefers it, her interest in the estate, so long as she remains single, may remain "in joint stock," until a division is made as above provided. The sixth item reads as follows: " I will and devise that my house and lot, in the town of Huntsville, where we now reside, and the lot and stable adjoining Thomas Brandon's garden, be reserved free of charge to my dear wife, as a residence, with all household and kitchen furniture, carriage and horses, and such other furniture belonging to the premises, as I may own at my death, and the same to be kept up in a reasonable and economical way for her use and the use of my children, until she calls for a division of her part of my estate, or the division shall be made agreeably to the provisions of this will. And all reasonable and necessary expenses for keeping up the farms, and the family expenses, economically made, shall be paid

by my executors out of the joint funds of my estate, until a division takes place agreeably to this will." The ninth item reads as follows : " I give and release to the Methodist Episcopal Church, of the town of Huntsville, Ala., all monies advanced for said church, and further will and enjoin upon my executors to pay over annually to the stewards of said Methodist E. Church, and their successors in office, fifty dollars, so long as my estate remains undivided among my children, or until they shall receive their distributive shares of my estate, when this donation shall cease ; or should my wife cause a division of my estate, then it shall cease, as it is intended to be a family contribution, such as I have paid for many years annually, and which I do not wish disturbed, as long as my property remains undivided, and as a joint stock for the use of my family."

From these several provisions of the will of Dr. Moore, it is very clear that he intended, so long as his property should be kept together, it should constitute a fund, out of which should be borne the family expenses, and the payment to the Methodist Church, at Huntsville. It was not contemplated that his executors should be required to keep a separate account against the wife and children as to the expenses incurred, but the whole expense of the domestic establishment was to be charged upon the common fund, or as the testator designates it " the joint stock," meaning thereby his undivided estate.

It is further our opinion, that a reasonable construction should be given to the will, in ascertaining what expenses fall within its provisions, as expenses "economically made;" that in construing the will we should look at the circumstances under which the testator made it—we should have regard to the state of his property and the condition of his family, &c.—2 Powell on Dev. 6, and cases cited in notes, 11 Law Lib. 4. Here is an immense estate, the annual income not being less than forty-five thousand dollars per year. This is to be divided between the widow and four children, but is to remain as joint stock, until a division, for the use of the family. We do not think it was the intention of Dr. Moore by providing for "expenses economically made," to restrict his family to the bare necessaries of life, or to deny to them the ordinary means of recreation, enjoyment or improvement, usually possessed by families moving in the same sphere, and similarly situated with respect to their pecuniary

circumstances. As we said above, the expression must have a reasonable construction; the family should preserve the just medium between prodigality on the one hand and parsimony on the other. Let us apply these general rules of construction to the case before us. The children being deprived of a father, the mother would naturally feel more interest in their education and training than any one else, and we think no valid objection can be urged why the executors should not permit her to superintend the education of her children, especially of her daughters, whose proper culture and training must mainly depend upon the affectionate care, solicitude, and vigilance of the mother. The withholding of such vigilance is the worst economy.

We think therefore, that under the circumstances disclosed in the bill of exceptions, Mrs. Moore might with propriety have visited her daughter, to look to her interest and to see that her education was properly conducted, and that she might well take with her the younger daughter and servant, and that the reasonable expenses of the trip should be a charge in favor of the executors against the estate. Whether the amount paid was more than was reasonably required to defray such expenses is not a question before us, as it was not decided upon by the court below. That is a matter, which, if doubtful, can be investigated when the settlement is again taken up, and will be decided in view of the rules above laid down. Let the decree be reversed and the cause remanded.