### ECHOLS vs. JORDAN AND WIFE.

[BILL IN EQUITY FOR PARTITION OF SLAVES, ACCOUNT, &c.]

1. *Bequest to married daughter, "to her and her children forever," construed an estate-tail, vesting absolute property in her.*—Where a testator bequeathed certain slaves and other personal property to his son, "to him and his heirs forever"; to his daughter Mary R., a married woman, certain other slaves, "*to her and her children forever*"; to his daughter Eliza P., also a married woman, certain other slaves, "to her and her heirs forever"; and, by a residuary clause, directed all the balance of his property, both real and personal, to be equally divided among his said three children, "share and share alike, and to belong to them and their heirs forever, except Mary R.'s portion, which shall be held by *her and her children forever*",—held, that the specific bequest to Mary R. was intended to create an estate-tail in her, and therefore vested in her the absolute property in the slaves; and that her child, who was living when the will was executed, and when the testator died, took no interest whatever. (R. W. WALKER, J., dissenting.)

APPEAL from the Chancery Court of Madison.

Heard before the Hon. JOHN FOSTER.

THE bill in this case was filed, on the 21st January, 1857, by Frances B. Rowan, an infant, suing by her next friend, against her father, Alfred A. Rowan, and William Echols ; and on the marriage of the complainant pending the suit, her husband, Thomas Jordan, was made a party complainant with her.   The bill sought a partition of certain slaves, in which the complainant claimed a one-half interest under the will of her maternal grandfather, Peter Binford, and which were in the possession of the defendant Echols, who held under a purchase from his co-defendant, Rowan ; also, an account of the hire of the slaves while in the possession of said Echols, and general relief.   Peter Binford, from whom both of the parties derived title, died in Madison county, Alabama, the place of his residence, in January, 1839, having made and published his last will and testament, which was dated the 9th January, 1839, and duly admitted to probate after his death.   The will of said Binford contained the following clauses :

" *Item 1st :* My will and wish is, that, after my decease, my executors, hereinafter named, do cause my body to be plainly and decently buried, without pomp or parade. *Secondly :* It is my will and desire, that all my just debts shall be paid by my said executors ; and, after this is done, it is my will and wish, that my property, both real and personal, shall be disposed of as follows—that is to say : I give and bequeath to my beloved son, Henry A. Binford, the following negroes, to-wit : Tom, Berry, Susanna, and Caroline ; likewise, my riding-horse, saddle, and bridle, and my two shot-guns, to him and his heirs forever.   I give and bequeath to my beloved daughter, Mary Rowan, the following negroes, to-wit, Minnie and Agnes, to her and her children forever.   I give and bequeath to my beloved daughter, Elizabeth Patton, the following slaves, to-wit, *Manerva* and Jane, to her and her heirs forever.   It is my will and wish, that my said executors, hereinafter named, shall pay to my beloved brother, Abner Binford, out of the mass of my estate, one hundred dollars per year, for three years, making in all three hundred dollars.   It is further my will and desire, that my said executors, hereinafter named, shall pay to my beloved nephew, Peter Binford,

2

son of Hugh Binford, out of the mass of my estate, the sum of one hundred and seventy-five dollars. It is also and further my will and desire, that all my property, both real and personal, be kept together by my executors, for two years after my decease, or until they make and gather two crops ; this is done to enable them to pay all my debts without selling any property ; and at the end of said two years, it is my will and desire, that all the balance of my property, both real and personal, not herein specially devised, shall be equally divided between my three well-beloved children, Henry A. Binford, Mary Rowan, and Elizabeth Patton, share and share alike, and to belong to them and their heirs forever; except Mary Rowan's portion, which it is my will and wish shall be held by her and her children forever. It is further and also my will and wish, that my son, Henry A. Binford, and my son-in-law, Alfred A. Rowan, and their families, shall have their support from, and live on my farm, until a final division takes place of all my property, if they, or either of them, choose to do so. It is further, and lastly, my will and wish, that my executors, hereinafter named, do cause a neat tomb-stone, set upon stone *pillows*, to be erected over my own grave, and that of my dear departed wife ; also, over the graves of my dear departed children, Peter and Francis.    Lastly, I hereby nominate and appoint my beloved son, Henry A. Binford, and my beloved son-in-law, Alfred A. Rowan, and John Patton, sole executors to this my last will," &c.

The complainant was the only child of Mrs. Mary Rowan, and was born before the date of the testator's will.    Mrs. Mary Rowan died in 1842.    The slaves in controversy were purchased by the defendant Echols, under legal advice, from Alfred A. Rowan, the husband of Mrs. Mary Rowan ; and continued in his possession, under claim of ownership, up to the filing of the bill.    A decree *pro confesso* was entered against the defendant Rowan.    A demurrer to the bill, for want of equity, was interposed by the defendant Echols, but was overruled by the chancellor ; and on final hearing, on pleadings and proof, a decree was rendered in favor of the complainants, which is now assigned as error by the defendant Echols.

ROBINSON & JONES, for appellant.

WALKER & BRICKELL, *contra*.

(Printed arguments were submitted by the counsel on both sides, which contained a critical examination of numerous cases, both English and American, but which, on account of their length, cannot be inserted *in extenso ;* and it has not been found practicable to condense them within the ordinary limits of a brief.)

A. J. WALKER, C. J.—In the will of Peter Binford, who died in 1839, there is a bequest to his son, Henry A., of slaves and other personalty, " to him and his heirs forever." There is also a bequest of slaves to his daughter, Elizabeth Patton, "to her and her heirs forever." Intervening between the two clauses making those bequests, is the clause to be construed by us, in the words following, to-wit: "*I give and bequeath to my beloved daughter, Mary Rowan, the following negroes, to-wit, Missouri and Agnes, to her and her children forever.*" There is also a residuary clause of the will, in the following words : "It is my will and desire, that all the balance of my property, both real and personal, not herein specifically devised, shall be equally divided between my three well-beloved children, Henry A. Binford, Mary Rowan, and Elizabeth Patton, share and share alike, and to belong to them and their heirs forever; *except Mary Rowan's portion, which it is my will and wish shall be held by her and her children forever.*" We decide, that the testator designed to bequeath an estate-tail, in the slaves Missouri and Agnes, to Mary Rowan; and that she therefore took an absolute title, which, vesting in her husband, has passed through him to the defendant Echols. We proceed to submit the arguments, which induce us to make that decision.

The precise form and order of the words of the bequest must be noted. The gift is to Mary Rowan, "*to her and her children forever.*" There is that which is requisite to convey a complete title to Mary Rowan, followed by the words, "*to her and her children forever.*" The succession of these words to others implying a transfer to the object of

grant, and their location in reference to each other, are strictly conformable to the qualities of the formal *habendum* clause of a deed. The legitimate and accustomed office of the *habendum* was, to declare what estate or interest was granted—not the quantity of the land. There was an old rule, that the *habendum,* as far as repugnant to the premises, should be void.—2 Bla. Com. 298; 4 Greenleaf's Cruise on R. P. 273; 4 Kent's Com. 468. And under that rule there could not have been, after premises granting the entirety, a *habendum* creating a tenancy in common. The *habendum* clause is still in almost universal use, in deeds conveying fee-simple estates, though with us very rarely of any practical importance; and its office in fixing the estate, or duration of title, is so well understood, that the import of the words used in it is comprehended almost as well by the common as by the professional mind. It is of frequent use in wills, as well as in deeds; and the almost universal acceptation of the peculiar form of expression is, that it describes the estate conferred. The fact that this peculiar form of expression is so generally used, alike by those skillful in the technicalities of the law and those who are not, in a particular sense, affords a strong argument, that such was the sense in which the testator employed it.

The same form of expression is used in the next preceding and next succeeding clauses, as well as in the residuary clause. The bequest in both is to the legatee, of specified property, to him (or her) and his (or her) *heirs* forever. In these two instances, there can be no doubt that the peculiar form of expression was adopted from a superabundant and unnecessary caution to express the intention that the legatees should take titles of perpetual duration. It is therefore apparent, that the testator understood the proper office of that form of expression, and used it for the accustomed purpose in the clause which we are considering.

There is a complete gift to Mary Rowan, in the words "I give and bequeath to my beloved daughter, Mary Rowan," &c. If the latter part of the clause, "to her and her children forever," has the effect of giving a joint estate to Mary Rowan and her child, as is contended by the counsel for the appellee, then there is an irreconcilable

conflict of bequests in one short clause. There is a bequest to Mary Rowan, and a bequest of the same property to Mary Rowan and her child. The former would give Mary Rowan the entire property; the latter, a moiety of it. It is our duty to search for a reasonable construction, which will avoid such a conflict, and a resort to the rule which sacrifices the former of two conflicting parts of a will. *Pace and Wife v. Bonner*, 27 Ala. 307; *Walker v. Walker*, 17 Ala. 396.

At the time when the will was made, the testator's daughter, Mary Rowan, had only one child. In construing the will, it is permissible to consider that extrinsic fact.—*Travis v. Morrison*, 28 Ala. 494; *Moore v. Moore*, 18 Ala. 242; 1 Jar. on Wills, 340. The term *children* must be confined to those living at the testator's death, unless a future period of enjoyment is appointed.—2 Williams on Ex. 935. The will was evidently made in anticipation of a speedy dissolution. If, then, the will be construed as vesting a joint estate in Mary Rowan and her only child, the word *children* is stricken out, and the word *child* substituted for it. The testator, in the use of the word "*children*," has indicated very clearly an intention to include other objects of bounty than the single child which his daughter had at the time; and yet, if the clause be understood to create a joint estate, it must be confined to Mary Rowan and her single child, excluding all after-born children, if there were such, and setting at naught the testator's intention that all the children should share in the legacy.

Furthermore, we may be aided in our search for the construction of the clause under consideration, by a comparison of it with the residuary clause. It directs that the residue of the testator's property should be equally divided between his three children, Henry A. Binford, Mary Rowan, and Elizabeth Patton, share and share alike, and should belong to them and their heirs forever, except Mary Rowan's portion, which should be held "by her and her children forever." The property is to be equally divided, share and share alike, between three children, of whom Mrs. Rowan is one. One share is denominated Mary Rowan's portion; and the bequest of it only differs from

the bequest of the other shares in this, that it is to be held by Mary Rowan and her children forever—they are to belong to the legatees and their heirs forever. It seems utterly impossible to understand this residuary clause as giving one-third of the *residuum* to Mary Rowan and her child. Such a construction would make a division between the two other legatees and Mary Rowan and *her child*, while the clause directs that it shall be between the two other legatees and Mary Rowan. It would make Mary Rowan and her child take a share alike with the others, while the will directs that Mary Rowan shall take it; and it would make the share the property of Mary Rowan and her child, while the will denominates it Mary Rowan's portion. Besides, it would make the mention of Mary Rowan's children the source of a legacy to her child, and it would make a form of expression employed in reference to the other legatees to designate the duration of an estate, the agency of directing the quantity of property to be taken in another legacy. For these reasons, we cannot understand the residuary clause as creating a joint interest in Mary Rowan and her child. The residuary clause construed in the case of *Lachland v. Downing*, (11 B. Mon. 32,) was strikingly like this, and children was held to be a word of limitation, upon reasoning the most of which is quite as applicable in this case as it was in that. It is evident from the similarity in the collocation of words and form of expression used, and the identity of purpose indicated, that a like estate was intended to be vested in Mary Rowan by the residuary clause and that under consideration.

It is argued on the part of the appellee, that the dropping of the word *heirs*, found in the bequest to the testator's other two children, and the substitution for it of the word *children*, show an intention to make a difference between them. We concur in that position; but we think it clear that it was the intention to vary the character and quality of the estate bequeathed, and not to make any change as to the quantity. The will was evidently drawn without the aid of professional skill. The use of the word *heirs* was altogether unnecessary to vest a complete title, in perpetuity, even in reference to real estate.—Clay's Digest, 156,

§ 33.  Yet the testator has used the word *heirs*, even in reference to specific legacies of personalty to his other two children.  And the care which seems to have been taken to insert words of inheritance in the residuary clause, indicates that the testator prepared his will under the impression, that the word *heirs* was necessary to vest a complete title in perpetuity.  As the clauses to the other children were drawn under that legal misapprehension, so we think the bequests to Mary Rowan were drawn under the mistaken belief that an estate-tail would be created, and that the testator intended to make a distinction between the bequests to his other children and that to Mary Rowan, by giving the former the unqualified absolute estate, and the latter an estate confined to her and her lineal descendants. And in this he stands in the category of many others who have manifested an intention which is unlawful and can not be carried into effect.

*Children,* in the natural and primary sense of the word, implies immediate offspring, and, in its legal acceptation, is not a word of limitation, unless it is absolutely necessary so to construe it in order to give effect to the testator's intention.—*Dunn v. Davis,* 12 Ala. 135 ; *Scott v. Nelson,* 3 Porter, 452 ; *Buffer v. Bradford,* 2 Atk. 220.  But, when the word is used in a different sense, and it is clearly indicated by the context, it must be understood in that sense.  Thus, the word has been treated as meaning grandchildren, issue, heirs of the body, &c., when the context has forced upon it that signification.—2 Jar. on Wills, 73 ; *Mowatt v. Carow,* 7 Paige, 328–339 ; *Scott v. Nelson,* 3 Porter, 453.

But it is said that the word *children* is never to receive a construction which would make it a word of limitation, when such construction renders the gift to the children inoperative.  There are two cases in which *children* is to receive a more extended signification, than is implied in its natural import.  One of those cases is where the testator has shown an intention, by the use of other words, that it should have such signification ; and the other is, where it is necessary to prevent the will from remaining inoperative. An illustration of the latter case is found in the first rule laid down in *Wild's case,* (6 Rep. 16,) that an estate-tail is

created by a devise to A and his children, there being no children. The children could not take jointly with A, because they were not *in rerum natura*; nor could they take in remainder, for that was not the intent. The testator designed that they should take in some way, and children was a word of limitation, because as such alone could it have effect. Lord Hardwicke, in replying to an argument in which that rule was invoked, said, that *children* is not a word of limitation, unless it is to comply with the intention of the testator, where the words can not take effect in any other way.—*Buffer v. Bradford*, 2 Atk. 220. In reference to the same rule, similar language is used in 1 Roper on Legacies, 8. Now, we understand this language to imply nothing more than that the interpretation of "children," as a word of limitation, on the ground of necessity, is never to be resorted to, except for the purpose of carrying out the testator's intention that the children should take, there being no other way to give effect to the devise to the children. It is a definition of the cases in which *children* becomes a word of limitation from *necessity*, predicated upon the reason of the rule. It does not convey the idea, that "*children*" must not be considered a word of limitation, notwithstanding the testator's intention that it should be so considered, if, being so considered, it will be deprived of all effect. The remark could never have been designed to infringe that cardinal and paramount rule in the construction of wills, that they must be understood in the sense intended by the testator. It has no effect on such a case as this, in which the testator intended that the word should be understood as a word of limitation.

It is also argued, that there can be no estate-tail here, because there are no words of procreation. The answer to this argument is, that whatever may be the rule in reference to deeds, such words are not necessary to the execution of an estate-tail in wills.—2 Black. Com. 115, 381.

We put our decision upon the ground of the testator's positive intention, as evidenced by the will itself, to create an estate-tail. That makes the distinction of this case from those in which it is held, under the rule in *Wild's case*, that a gift to A and children, there being children *in esse*,

creates a present joint estate. It also distinguishes it from those cases in which it is held, under the third rule in *Wild's case*, that where the gift is to A, and after his decease to his children, the children take in remainder.— *Wild's case*, 6 Coke, 16.

The counsel on both sides have exhibited great industry in collecting cases. We decline to comment upon them. It would be difficult, perhaps impossible, to reconcile them all. Several of the cases cited for the appellant are strikingly like this, and contribute much to sustain our construction of the will.— *Wheatland v. Dodge*, 10 Metc. 502; *Merryman v. Merryman*, 5 Munf. 440; *Wood v. Barron*, 1 East, 260.

Decree reversed, and bill dismissed.

R. W. WALKER, J., *dissenting*, held that the better construction of the will would be, that Mrs. Rowan took a life-estate, with remainder to her children, vested as to the child in being, and opening to let in after-born children; and, in support of this view, he cited *Hannan v. Osborne*, 4 Paige's Ch. 336; *Crawford v. Trotter*, 4 Madd. 361; *Chesnut v. Meares*, 3 Jones' Eq. (N. C.) 416; *Churchill v. Churchill*, 2 Metc. 466; *Can v. Eslett*, 16 B. Monr. 313; *Vaughn v. Marquis of Headfort*, 10 Sim. 639; *Williams v. McConico*, 36 Ala. 26.