## ABERCROMBIE'S EXECUTOR *vs.* ABERCROMBIE'S HEIRS.

[BILL IN EQUITY BY EXECUTOR FOR CONSTRUCTION OF WILL AND DIRECTIONS AS TO EXECUTION OF TRUSTS.]

1. *Validity of directions by will concerning government and treatment of slaves.*—If a testator gives specific directions by will to his executor, concerning the treatment and government of his young slaves, until they arrive at the age fixed for their emancipation, which contemplate that they shall remain in this State and yet occupy a condition of qualified freedom, the trust is invalid, since our law recognizes no other *status* than that of absolute freedom or absolute slavery ; but, where he directs his executor "to receive them into his possession, to take care of, protect, govern, and control them, until they arrive at age, according to the laws of this State, treating them with humanity according to the position they occupy in society, and see that they are not imposed upon by others", the directions create no additional obligation on the executor to that which would exist independently of them, and are not illegal.

2. *Validity of bequest of freedom to slaves.*—A bequest of slaves to an executor, with directions "to have their freedom secured to them when they shall have arrived at age, by the laws of this State, if it can be done, so that they may remain here, and, if he cannot do so, to send them to some free State or country, wherever in his discretion will be best for them," is a valid trust, which the executor, under our existing laws, has full authority to execute ;

and if the laws in force at the time fixed for their emancipation should not allow them to remain in this State free, and the executor should then refuse to remove them, after having submitted his administration to a court of equity, although the slaves themselves might not be able to enforce the execution of the trust by suit, the court would have ample powers to enforce it.

3. *Parol evidence inadmissible to supply omission in written will.*—There is no legal principle more firmly established by the uniform and constant decisions of judicial tribunals, than the rule which declares that an omission in a written will cannot be supplied by parol.

4. *Validity of pecuniary legacies to slaves.*—A pecuniary legacy to a slave, to vest immediately on the testator's death, is void, because he is incapable of taking as legatee; but if the legacy is not to be paid until the time fixed for his emancipation, and there is no express gift before the time of payment, it is valid.

5. *Residuary legacy to person incapable of taking distributable among next of kin.*—If a testator appoints as his residuary legatees a slave woman and her children, and directs the emancipation of the children only, the legacy to the mother is void, and she herself, with her portion of the residuary legacy, must be regarded as property not disposed of by the will, and therefore distributable to the next of kin under the statute.

6. *Bequest to executor in trust enures to next of kin on failure of trust.*—Where property is bequeathed to an executor in trust for a specific object, which fails or is declared invalid, he takes no personal interest in it, but a resulting trust then arises in favor of the next of kin.

Appeal from the Chancery Court of Montgomery.
Heard before the Hon. Wade Keyes.

This bill was filed by Robert J. Ware, as executor of the last will and testament of Albert G. Abercrombie, deceased, against the heirs-at-law of said decedent; asking the court to construe his will, and to decide upon the validity of the bequests contained in it. The said will, which was signed, sealed, and delivered in the presence of three witnesses, dated December 15, 1848, and admitted to probate in the proper office in Montgomery county on 20th February, 1849, is in these' words :

"The State of Alabama. Montgomery County.

"Know all men by these presents, that I, Albert G. Abercrombie, of the State and county above written, being in ill health, but of a sound mind and memory, and believing that I am not to live long upon this earth, and being desirous of arranging my affairs before death, do make this my last will and testament, as follows :

"I, Albert G. Abercrombie, for and in consideration of the sum of one dollar in hand paid, the receipt whereof is hereby. acknowledged, do bargain, sell, and convey unto Robert J. Ware, of the above State and county, all of my property, both real, personal, and mixed, to have and to hold the same for the purposes hereinafter mentioned—to-wit: The said Robert J. Ware is to receive into his possession, at my death, negro woman Nancy, and her six children—to-wit, Jack, Ellen, Nick, Bonaparte, Susan and Louisa; and the said children above named the said Ware is to take care of, protect, govern, and control, until they arrive at age, according to the laws of this State, treating them with humanity according to the position they occupy in society, and see that they are not imposed upon by others. And when the said six children shall have arrived at age, the said Ware is to have their freedom secured to them, by the laws of the State of Alabama, if it can be done, so that they may remain in the State. If he cannot do so, he, the said Ware, is to send them to some free State or country, wherever in his discretion will be best for them.

"Now, in order to induce and enable the said Ware to carry out the above conditions, I, the said Albert G. Abercrombie, do hereby convey and deliver over all of my property, as above written, at my death, unto the said Robert J. Ware, to use, manage, control, sell, and dispose of, in such manner as the said Ware may think best; and after having paid such debts as I may justly owe, and having compensated himself for such trouble and expense as he may have incurred for and on account of the six children above named, of which amount he, the said Ware, shall be the sole judge to determine, the remainder, if any, shall be paid over to the said six children and their mother Nancy.

"And in order that the said Robert J. Ware may have a full and free discretion in the premises, it is my particular request and desire, that he shall not be held liable to make returns to any court of his doings and acts, and that he shall not be required to enter into bond and security for the performance of the above request, but that the whole matter shall be left entirely to his judgment and discretion. And in order that there shall be no disappointment in the perform-

ance of the above request, in case of the death of the said Robert J. Ware before the said six children shall have arrived at age, I hereby confer the same power to the executor or administrator of the said Robert that I have conferred upon him. And I, the said Albert G. Abercrombie, do by these presents make the provisions of this conveyance irrevocable on my part, but not to take effect until my death, when it is to go fully into effect.

"Given under my hand and seal," &c.

The defendants filed answers, insisting that the bequests were invalid and contrary to the policy and statutes of the State.

On final hearing, the chancellor decreed,—

"1. That the complainant may have the freedom of the children secured to them, so that they may remain in this State, at the time when they shall have arrived at twenty-one years of age, if at that time it can be done; but if their freedom cannot then be secured, so that they can remain in this State, then the complainant may remove them to such non-slaveholding State or country as in his discretion he may elect.

"2. That if the youngest child should die before attaining twenty-one years of age, then the time of emancipation will be when the next youngest shall have arrived at the age of twenty-one years ; et sic de similibus.

"3. That until the emancipation of the children shall have been effected in this State as aforesaid, or until they shall be started to a non-slaveholding State or country, to which they shall in good faith be carried, or attempted to be carried, they must be accounted for as slaves belonging to the estate of the testator.

"4. That the woman Nancy is subject to distribution, and may be sold by the complainant.

"5. That the portion attempted to be given to her must be distributed among the testator's next of kin.

"6. That the residue of the estate, after deducting debts, expenses, and reasonable compensation to complainant, may be equally divided among the children, or the survivors, after their emancipation.

"7. That if the complainant should die before the children shall have arrived at twenty-one years of age, his executor or

administrator may act in the premises, as the complainant himself might have done.

"8. That the settlement of the testator's estate be removed to this court, and that the executor make annual settlements thereof before the register, until he shall be finally discharged.

"9. That the defendants be perpetually enjoined from litigating with complainant in other courts about the testator's estate.

"10. That the complainant pay the costs of this suit out of the estate of his said testator.

"11. And that he have leave, from time to time, to apply for further instructions."

From this decree each party appealed, and cross errors are here assigned. The errors assigned by the executor are,—

1. That the chancellor erred in decreeing, that until the emancipation of the children shall have been effected in this State, or until they shall be started to a non-slaveholding State or country, they must be accounted for as slaves belonging to the testator.

2. In decreeing that the woman Nancy is subject to distribution and may be sold by complainant.

3. In decreeing that the portion attempted to be given to her must be distributed among the testator's next of kin.

4. In not decreeing that the woman Nancy was comprehended in the same trust with her children, and with them entitled to freedom when carried out of the State.

5. In not decreeing that, if said Nancy was not free when carried by the executor to a non-slaveholding State, she should be held as the property of her children after removal, and also her hire accruing.

6. In not decreeing that said Nancy, with her hire, was the property of said Ware by the terms of the will.

On the part of the heirs-at-law the errors assigned are,—

1. That the chancellor should have decreed the bequest to the executor of Nancy and her six children, upon the trusts in the will, to be invalid.

2. That he should have decreed the devise and bequest to the executor of all the testator's estate, upon the trusts in the will, to be invalid.

3. That he erred in declaring the trusts valid.

JAS. E. BELSER, and WATTS, JUDGE & JACKSON, for the executor.

ELMORE & YANCEY, for the heirs-at-law, *contra.*

(No briefs have come to the Reporter's hand.)

GOLDTHWAITE, J.—If, by the directions given by the testator as to the government and treatment of the children until they arrived at age, it was intended that until the period fixed for their emancipation, they should occupy a condition of qualified freedom, then, unquestionably, the trust would be invalid. Our law recognizes no other *status*, than that of absolute freedom, or absolute slavery; and if it was the object of the testator that the slaves should remain in the State, invested with privileges which by law do not belong to that class of population, the intention would be illegal, and the trust in which it was embodied invalid.—Washington v. Blunt, 8 Ired. Eq. 253; Atwood v. Beck, 21 Ala. 588, 615.

The directions, however, in our opinion, amount to nothing whatever, as they impose no obligations upon the executor, which would not exist if the clause referred to had been omitted. The injunction is, in effect, simply to take care of the slaves, and to treat them with humanity; and whatever may have been the intention of the testator, there is certainly nothing in the language used, from which it could legitimately be inferred that the children were to occupy any other position than that of slaves, or to be treated in a manner which was in any respect incompatible with that condition. It is the moral, if not the legal duty, of every master or owner, to observe towards his slaves the same general course of conduct, which the testator in these directions prescribed; and this being the case, we cannot say that there is anything illegal in them. If, however, it was conceded that they were contrary to law, we do not see that either party would gain anything by the concession; as the fact that one of the legacies may be invalid, does not affect other bequests which are independent of it.—Florey v. Florey, 24 Ala. 241.

As to the directions given by the testator for the emancipation of the children of Nancy, there can be no doubt that, under our decisions, it was a perfectly valid trust, and one which the executor, under the existing laws, would have full

authority to execute, by taking them to a free country and manumitting them.—Beck v. Atwood, *supra.* Should the laws in force in this State, at the period fixed for their emancipation, prevent the intention of the testator in respect to their remaining in this State as free, from being carried out, it may be that the slaves themselves might not be able, by a suit, to enforce the trust; but if it be so, in relation to which we express no opinion, it cannot affect its validity so far as the executor is concerned; and if he was so regardless of duties, which he had voluntarily assumed, and of the oath which he had taken to discharge them, as to fail in the faithful execution of the trust, the powers of the court of chancery, to which by his bill he has submitted the administration, are amply sufficient to enforce it; and the rule which might operate to prevent the beneficiaries themselves from enforcing it by suit, would have no application.

It is clear, also, that by the terms of the will, the slave Nancy is not to be emancipated. If we were at liberty to resort to parol evidence, the case might be different. But the words of the instrument are not such as to allow this. There is no provision made, or direction given, as to her emancipation. The executor is to take Nancy and her six children into possession; and the testator then gives instructions as to the treatment of the children, and then proceeds, after a full stop, "And when the said six children have arrived of age, the said Ware is to have their freedom secured to them," &c. There is no rule or principle which would authorize us to refer the word "their", in the clause we have quoted, to any other antecedent than the "six children"; and this being the case, we must inflexibly adhere to the will itself, although the result may be that the intention of the testator may be partially defeated. There is no legal principle more firmly established—none that has received a more constant and uniform support from the judicial tribunals, than the rule which declares, that an omission in a written will cannot be supplied by parol evidence.—Cheney's case, 5 Rep. 68; Vernon's case, 4 *ib.* 4; Strode v. Faulkland, 3 Ch. R. 98; Brown v. Selwin, Cas. temp. Talb. 240; Lawrence v. Dadeville, 1 Ld. Raym. 438; Bennett v. Davis, 2 P. Wms. 316; 1 Ves. (sen.) 189; Walpole v. Cholmondely, 7 T. R. 138; 1 Greenl. Ev., §§ 290, 291.

As to the legacies directed by the will to the children of Nancy, it is certain that, if it was the intention of the testator they should vest at his death, they must be held void, for the reason, that slaves are incapable of taking ; but the decision of this question depends upon the rational interpretation of the whole instrument. There are no words which force us to this conclusion. The legacies are not to be paid until the period fixed for the emancipation of the legatees, and there is no express gift of the legacies before the time of payment. In addition to this, the gift is to a class of persons who are incapable of taking before that time ; and these circumstances, we think, are conclusive as to the intention of the testator, that the payment was not to be made until the leading object, which it is apparent he had in view, was accomplished—the emancipation of the slaves referred to. Upon this construction, the legacies to the children were valid.—Atwood v. Beck, *supra*.

The bequest to the slave Nancy was void, as she had no capacity to take; and she herself must be regarded as property not bequeathed by the will, for the reason, that the provisions in relation to emancipation do not apply to her, and she is not embraced in the trust which authorizes Ware to sell and dispose of the property. Although the last is general in its terms, it is manifest that it was not the intention of the testator to include her, as he gives her a portion of the proceeds of the property to which this trust extends ; and although the gift is void, it is not the less expressive as indicating the intentions of the testator in this respect. It follows, necessarily, therefore, that this slave, and the portion bequeathed to her out of the proceeds of the other property, must be regarded as not disposed of by the testator, and subject to distribution.

In opposition to the views we have expressed upon the last point, it has been urged, that if the slave Nancy is not included in the emancipation clause, and the legacy to her is void, still under the will she becomes the absolute property of Ware. This position is not tenable. The property was conveyed to Ware for the execution of certain specified trusts, and for no other purpose. Those trusts were, the manumission of certain slaves, and the payment of the legacies bequeathed

to them. Where the testator fails to make a complete and effectual disposition of all his property, the law makes the disposition which he has failed to do; and the principle equally applies to those cases where the estate is devised or bequeathed to a trustee. A resulting trust to the property not disposed of is then created in favor of the heir or distributees.—1 Jarm. on Wills, 502, and cases there cited.

It results from the views we have expressed, that the decree of the chancellor was in all respects correct.

Judgment affirmed, at the cost of the appellant.