# Rosenau v. Childress.

### Statutory Action of Ejectment.

1. *Construction of wills; devise of life estate with contingent remainder.*—Under a devise to testator's daughter of land "to be held and enjoyed by her during her natural life, and after her death to be equally divided among her children, if she shall leave children, and if not, then to be equally divided among my other children," the the daughter takes a life estate with remainder to testator's other

[Rosenau v. Childress.]

children, contingent upon the death of the life tenant without children surviving her.

2. *Same; same; reversion on death of life tenant.*—Where a testator devised land to his daughter for life, to be divided after her death among her children, if she left any surviving her, and, if not, then remainder over to the other children of the testator, upon the death of the daughter without issue, after surviving all the other children of the testator, the grand-children of the testator, as his heirs at law, are entitled to the estate as reversioners.

3. *Same; same; when statute of limitations begin to run against reversioners.*—Where a testator devises land to his daughter for life with remainder over to his other children on her death without children, and the life tenant, after surviving all the rest of testator's children, dies without issue, the statute of limitations does not begin to run against the testator's grand-children, who claim as reversioners, until after the death of the life tenant.

APPEAL from the Circuit Court of Tuscaloosa.

Tried before the Hon. SAMUEL H. SPROTT.

This was a statutory action in the nature of ejectment, instituted on September 9, 1893, by the appellees against the appellants, for the recovery of a tract of land specifically described in the complaint.

The cause was tried by the court without the intervention of a jury, upon an agreed statement of facts. This agreed statements of facts recited that the plaintiffs were the grand-children and great-grand-children of James Childress, deceased ; that Mrs. Susan W. Read, who was Susan W. Childress, a daughter of the testator James Childress, out-lived all the other children of the testator; that the defendants claimed through mesne conveyances from Susan W. Read and also claimed title by adverse possession, by the statute of limitation and by right of prescription ; that the defendants and those under whom they claim went into possession under their respective conveyances in 1867 ; that Susan W. Read never had a child or children, and died April 20, 1892 ; that her husband J. B. Read survives her.

The will of James Childress, deceased, was copied in the agreed statement of facts, and in it he bequeathed to his daughter, Susan W. Childress, who was afterwards Mrs. Susan W. Read, certain land in which the property involved in this controversy was included. The limitation of this bequest, as contained in said will, is copied in the opinion. The last clause of the will of

[Rosenau v. Childress.]

James Childress was as follows: "In making the above will and testament, it is my object and intention to sesure to the families of my children, as well as to themselves, the use and enjoyment of my property, and not to leave it liable to be sold or taken away from them in any manner or means, whatever; their children and families are to have a subsisting title and claim to the use of the property jointly with themselves, and such is the construction I wish placed upon my will."

Upon the submission of the cause to the court, in accordance with the agreement on file, judgment was rendered in favor of the plaintiff, and there was an assessment of the proven rental value of the property involved in the controversy, as damages. From this judgment the defendants appeal, and assign its rendition as error. As stated in the opinion, the only question to be considered on the present appeal was the construction of the will of James Childress in its bequest to Mrs. Susan W. Read.

A. B. McEACHIN, J. M. MARTIN and G. W. VAN HOOSE, for appellants.—The word children in the bequest to Mrs. Read was a word of limitations, either in law of estates tail or under the rule in *Shelley's Case*, and Mrs. Read took a fee simple estate.—*Price v. Taylor*, 28 Penn. St. 95, s. c. 70 Amer. Dec. 105; *Kleppner v. Laverty*, 70 Pa. St. 70; *Yarnall's Appeal*, 70 Pa. St. 335; *Thomas v. Higgins*, 47 Md. 439.

2. The last and constructual clause of the will solves this seeming difficulty. By this it is clearly shown that the testator had no desire nor intention to entail his estate, or create contingent remainders. He puts all of his legatees on the same footing. He says, "their children and families are to have a subsisting title and claim to the use of the property jointly with themselves, and such is the construction I wish placed upon my will." Not an intimation is given that there was to be a reversion or a remainder, and no distinction is made in the bequest to Mrs. Read. There was personal property included in the legacy, which is another indication that the property was given to the children, their families and their heirs. The constructional clause is vested with additional influence by reason of being the last item of the will. The bequest to Mrs. Read created in

[Rosenau v. Childress.]

her a fee tail estate, which was converted into an abso-
lute title by the operation of our statute.   We think that
this proposition is settled in our favor by the following
Alabama decisions.—Beach on Wills, §191 *et seq*; *Simmons
v. Augustine*, 3 Porter, 69 ; *Martin v. McRee*, 30 Ala. 116 ;
*Bibb v. Bibb*, 79 Ala. 437 ; Schouler on Wills, § 533 ; Jar-
man on Wills, 147; *Wright v. Brown*, 22 S. E. Rep. 313 ;
2 Jarman on Wills, 1241 *et seq*.

3.   An estate .to one for life with remainder to
her children, and in case she dies without children, the
remainder over to the other children of the testator,
creates 'an estate tail to the first maker.   The word "chil-
dren" in a will is often a word of limitation, just as
"heirs" or "heirs of the body," are, and in the same
way creates an estate tail.—Beach on Wills, § 191 ;
*Williams v. Leech*, 28 Pa. St. 89 ; *Nagler's Appeal*, 33 Pa.
St. 89 ; *McKee v. McKinley*, 33 Pa. St. 92 ; *Oyster v. Oys-
ter*, 100 Pa. St. 538 ; *Belslay v. Engel*, 107 Ill. 182 ; *Stump
v. Jordan*, 54 Md. 619 ; *Nightingale v. Burrell*, 15 Pick.
104 ; *Wheatland v. Dodge*, 10 Met. 502; *Echols v. Jordan*,
39 Ala. 24 ; *Callis v. Kemp*, 11 Gratt. 78 ; *Bare v. Paynes*,
6 Rand. 73; 9 Yerger 20, 30 Amer. Dec. 400.

4.   And thus it will appear, as we contend, that the
bequest, in the event of the death of Mrs. Read without
children, would take the regular course under the law
of descent, and, therefore, created an estate tail, and
vested an absolute title in Mrs. Read.   It could not come
within the exception of the law converting estates tail
into fee simple titles.—*Simmons v. Augustine*, 3 Por. 69 ;
*Martin v. McRee*, 30 Ala. 116.

5.   The appellants having held the lands sued for, un-
der an absolute deed from the tenant for life, and ad-
versely to the remaindermen, for more than twenty
years before this suit was brought, are entitled to
hold it against this action under the law of prescription.
*Woodstock Iron Co. v. Fullenwider*, 87 Ala. 584; *Lans-
den v. Bone*, 90 Ala. 446; *Gilmer v. Morris*, 80 Ala. 78.

A. M. TUNSTALL, FOSTER & OLIVER, and JONES, MAY-
FIELD & BROWN, *contra*.—1.   The will of James Childress
gave to Susan W. Childress an estate for
life only, and not an estate tail, in the
property sued for.   The clear intention of the testator
was that Mrs. Read should take only a life estate.   If

[Rosenau v. Childress.]

this be true, then it is immaterial whether the appellees take as purchasers under the will, or by descent. In either event, they are entitled to recover; because, if any one is entitled to the remainder under the will, it is they, and if any one is entitled to the reversion it is they. The first established rule of construction of wills, to which the others are aids, is that effect should be given to the intention of the testator, and the words used are to be understood in the sense indicated by the whole instrument. The word "heirs" does not ordinarily mean "children," but it will be so construed when necessary to carry out the clear intention of the testator.—*Haverstick's Appeal*, 103 Pa. St. 394; *Chew v. Keller*, 100 Mo. 362; 1 Ballard's Ann. Law of Real Prop. §§ 272, 373, 374, 375; *Guthrie's Appeal*, 37 Pa. St. 9; *Chrystie v. Phyfe*, 19 N. Y. 347; 3 Jarman on Wills, (5th Am. ed) 94; 4 Kent's Com. (13 ed.) 200; Wigram & O'Hara on Wills, 310; 2 Freeman on Rem. 208; 3 Amer. & Eng. Encyc. of Law, 230, 231; *Lytle v. Beveridge*, 58 N. Y. 592.

2. If the court should hold that the estate created by this item of the will is an executory devise, still, the remainder over to the other children of the testator is good, and will be given effect, because the limitation over was upon a definite and not an indefinite failure of issue of Mrs. Read.—*Williams v. Graves*, 17 Ala. 62; *Powell v. Glenn*, 21 Ala. 458; *Doyle v. Bouler*, 7 Ala. 246. The will of James Childress will not bear any construction under which Mrs. Susan W. Read will take more than a life estate. Therefore, whether the estate given by the will to the other children of the testator be a vested remainder, a contingent remainder, or an executory devise, the appellees, who are the children and grand-children of James Childress take the remainder—whether it be under the will, or as heirs of James Childress—and the court correctly found that the appelless were entitled to recover the land sued for.

3. The remainder over in fee upon the death of Susan W. passed by descent to the heirs of the remaindermen.—2 Washb. Real Prop. 640; 2 Leading Cases in Law of Real Prop. 673; 1 Jarman on Wills, 149; 4 Kent's Com. 261, 262; 1 Fearne on Remainders, 364.

4. If the remainder over failed to vest, appellees are, nevertheless entitled to recover as reversioners of the es-

[Rosenau v. Childress.]

tate of James Childress.—2 Washb. Real Prop. (5th ed.), 540, § 4.

5. The possesssion of appellants was not adverse to appellees till the death of Suan W. in 1890. It has always and uniformly been held that neither possession of the life tenant, nor that of his grantee nor of any one claiming under him, can be adverse to the remainder-man during the life of the life tenant. The record in this case shows that Mrs. Susan W. Read was alive until the 20th day of April, 1890. Therefore, when this suit was brought, the defendants had been holding the land sued for, adversely to the plaintiffs for three years and five months, and no longer.—*Pickett v. Pope*, 74 Ala. 122 ; *Jackson v. Harson*, 17 Am. Dec. 517 ; *Varick v. Jackson*, 19 Amer. Dec. 574 ; *Bass v. Bass*, 89 Ala. 408; *Smith v. Cooper*, 59 Ala. 494; *Gindrat v. West. Railway of Ala.*, 96 Ala. 162 ; Tiedeman on Real Prop, § 715 ; 3 Washb. Real Prop. (5th ed.), 150, § 30. The following cases are to the same effect, since they hold that the occupant was not entitled to the value of his improvements for the reason that when they were erected, the occupant was not holding adverse to the remaindermen.—*Barrett v. Stradl*, 9 Amer. St. Rep. 795 ; Sedgwick & Wait on Trial of Titles to Land, § 708.

HEAD, J.—We think the devise and bequest to testator's daughter, Susan W. Childress, who subsequently married Read, plainly manifests its meaning. By it, the property mentioned, real and personal (the latter not being in controversy here), was given to Mrs. Read "to be held and enjoyed by her during her natural life, and after her death to be equally divided among her children, if she shall leave children, and if not then to be equally divided "among my other children, to be held by them in the manner before described." The provision created an estate in Mrs. Read for her life, with remainder to the testator's other children, contingent upon the death of the life tenant without children her surviving.— *Campbell v. Noble*, 110 Ala. 382; *May v. Richie*, 65 Ala. 602. If she had left children, they would have taken the remainder. She died without children. All the other children of testator died prior to the death of Mrs. Read. This possessory action is institutued by the grand-children and great-grand-children of testator

against defendants, who hold and claim under remote conveyances from Mrs. Read, executed during her life estate. It is immaterial whether the meaning of the will was to confer the estate in remainder, contingently, upon the testator's other children living at testator's death, or upon those living at the death of the life tenant, for the result, in the present case, is the same under either interpretation. If the remainder to the testator's children failed for the want of a person designated to take upon the happening of the contingency, the heirs at law of the testator took as reversioners, and the plaintiffs, being such heirs, or inheriting from them, are entitled.

The statute of 1812 abolishing estates tail nor the Rule in Shelley's Case have any application here. It is true there have been, and may be deeds and wills so constructed, that the term "children" would be properly interpreted as "heirs," or "heirs of the body," as the term may be, sometime, held to include grand-children; and as "heirs" or "heirs of the body" may mean "children;" but these are not the ordinary and primary meanings of such terms, and to so construe them requires peculiarities of the instrument clearly evincing an intention to that end.—*Campbell v. Noble*, 110 Ala. 382, *supra*; *Echols v. Jordan*, 39 Ala. 24. It is not that a grant or devise to one for life with remainder. to his children, can ever, under the rules of the common law, create an estate in fee simple or fee tail in the first taker, but, in the cases of the kind to which we have just referred, the question is, as to how the will or deed should be read. When the grantor or testator said "children," does the context and surroundings show that he did not mean it, in its primary sense, but meant "heirs," or "heirs of the body?" If so, then the disposition will be read and enforced as if it contained the latter terms instead of the former. In the present devise, there is nothing whatever to indicate that the testator did not use the term, "children" (the children of Mrs. Reed) in its primary sense; and to hold, in such a case, that the word meant "heirs," would do extreme violence to the language employed, and practically merge the term "children" in that of "heirs." The concluding clause of the will, called by counsel the constructional clause, exerts no influence upon the question in hand.

[Halsey v. Connell, Green & Co.]

The testator seemed to have the thought that his children for whom he made provision, might dispose of their estates, and deprive themselves and their families of the use and enjoyment of the same, which he desired they should have. He inserted the clause in question for the purpose of giving expression to that idea and to protect this family right. It could not possibly operate to enlarge the duration of the respective estates of his children, under the devises to them, respectively. If it had any effect, at all, upon such estates, it was to diminish their quantum, by letting in others—members of their families—to share interests therein. Apply it to Mrs. Read: It might be argued that if she had a family, the clause entitled its members to share in the estate devised to her; but, by no means, that it enlarged her estate to a fee.

The statute of limitations did not begin to run against the plaintiffs until the death of Mrs. Read, which occurred April 20th, 1890. Until then there was no remedy, legal or equitable, open to them.

By agreement of parties no other question is to be considered. We will not be understood, therefore, as holding that all the defendants are jointly liable for damages for detention of property exclusively detained by each; nor that the defendants are not entitled to the benefit of the provision of section 2706 of the Code—Mrs. Read having died more than a year before the institution of the suit, and adverse possession having commenced at her death.

The circuit court properly construed the will, and its judgment is

Affirmed.