(98 South. 294)
### SUMNER et al. v. BINGHAM et al.
### (2 Div. 814.)

(Supreme Court of Alabama. Dec. 13, 1923.)

**Life estates ☞17 — Life tenant making improvements not entitled to reimbursement from reversioner.**

Where life tenant under a will made an outlay for altogether new and original improvements, even though he made them under an erroneous belief that his son had a vested interest in remainder, while his son's interest was contingent and never vested, he is not entitled to an equitable lien for reimbursement as against reversioner.

Thomas, J., dissenting.

Appeal from Circuit Court, Greene County; R. I. Jones, Judge.

Bill in equity by Martin T. Sumner, individually and as administrator of the estate of Percy H. Sumner, deceased, against Rose-

mary Bingham and others, to declare a lien on lands for improvements, etc. From a decree sustaining a demurrer to the bill, complainant appeals. Affirmed.

William M. Spencer, Jr., of Birmingham, and J. F. Aldridge, of Eutaw, for appellant.

The complainant is entitled to be reimbursed for valuable improvements made on the lands by himself and his intestate. Troy v. Protestant Church, 174 Ala. 380, 56 South. 982, Ann. Cas. 1914B, 815; Houston v. Tribbetts, 171 Ill. 547. 49 N. E. 711, 63 Am. St. Rep. 275; In re Whitney, 75 Misc. Rep. 610, 136 N. Y. Supp. 633; In re Laytin, 20 N. Y. Supp. 72; In re Wright's Estate, 234 Pa. 580, 83 Atl. 427; Middleton v. Rigsbee, 179 N. C. 437, 102 S. E. 780; Porter v. Henderson, 203 Ala. 312, 82 South. 668; Gillespie v. Gillespie, 149 Ala. 184, 43 South. 12. Equity will not permit the unjust enrichment of one at the expense of another. McDaniel v. L. & N., 155 Ala. 553, 46 South. 981; Hatcher v. Briggs, 6 Or. 31; 25 Cyc. 667; Gordon Co. v. Tweedy, 74 Ala. 232, 49 Am. Rep. 813; Pritchard v. Williams, 181 N. C. 46, 106 S. E. 144.

Clarkson & Penick, of Tuscaloosa, for appellees.

A tenant for life is under no obligation to make improvements, and cannot demand that the owner of the inheritance pay any part of the cost thereof. Tiedman on Real Prop. (3d Ed.) 56. Such tenant has no claim for any improvements he may have made on the premises. Pulse v. Osborn (Ind. App.) 60 N. E. 374; Elam v. Parkhill, 60 Tex. 581; Brodie v. Parsons (Ky.) 64 S. W. 426; 1 Reeves on Real Prop. 772; Sohier v. Eldredge, 103 Mass. 345; Hagan v. Varney, 147 Ill. 281, 35 N. E. 219; Killmer v. Wuchner, 79 Iowa, 772, 45 N. W. 299, 8 L. R. A. 289, 18 Am. St. Rep. 392; 1 Washburn on Real Prop. 129; Chilvers v. Race, 196 Ill. 71, 63 N. E. 701; Presbyterian Church v. Fithian (Ky.) 29 S. W. 143; 16 Cyc. 631; Schimpf v. Rhodewald, 62 Neb. 105, 86 N. W. 908, 81 Am. St. Rep. 182; 16 A. & E. Ency. L. 117.

SAYRE, J. When a branch of this litigation was here on former appeal (Bingham v. Sumner, 206 Ala. 266, 89 South. 479), the judgment was that Martin T. Sumner held the lands in suit as tenant for life, and, as to that, there has never been any question between the parties. But it was also held that, in the contingency presented by the facts—the children of Martin T. and testatrix Ada H. Sumner, his wife (who departed this life in 1899), having died pending the life estate—the remainder of the estate was not disposed of by her will, and would descend to the principal appellee on this record, Rosemary Bingham, heir at law of the deceased owner.

The present bill is filed by the life tenant, individually and as administrator of the estate of Percy H. Sumner, one of the two children, who died in 1919—the other having died in early infancy—and seeks a decree ascertaining the amount of the permanent enhancement of the value of the lands, thus partially disposed of by the will, by reason of improvements made thereon by complainant and said Percy during his life, apportioning the same ratably and equitably between the estates for life and in reversion, and declaring a lien on the last-named estate in favor of the former to the extent of the value of the improvements so apportioned to it.

Appellant takes occasion to draw into question the opinion and judgment of the court on former appeal as to the proper interpretation of the will; but we are not yet convinced that the conclusion then reached was erroneous, and apprehend that the reasons upon which it proceeded need no further statement. Moreover, it may be well to note, the present bill proceeds upon the theory that the decision in the former case was correct, and its equity depends exclusively upon that theory.

The main purpose of the present bill—ostensibly so at least—has been stated. It may be conceded that the question whether the estate in reversion should be required to compensate the life estate for permanent improvements and whether equity will create a lien upon the reversionary estate upon consideration of general principles of justice, ex æquo et bono, has fallen into some sort of dispute in other jurisdictions; but there can be no doubt that at the common law, if the tenant for life makes improvements upon the estate, as distinguished from ordinary repairs, he cannot claim compensation therefor from the reversioner or remainderman, though he is under no legal obligation to do more than keep the premises in repair. 1 Washb. Real Prop. (6th Ed.) § 237; Tiedeman on Real Prop. (2d Ed.) § 68; 16 Am. & Eng. Encyc. of Law (2d Ed.) 117; 21 C. J. 953, § 91. Mr. Pomeroy says: "In pursuance of the same general doctrine"—that is, the doctrine that, "Where a party innocently and in good faith, though under a mistake as to the true condition of the title, makes improvements or repairs or other expenditures which permanently increase the value of the property, so that the real owner, when he seeks the aid of equity to establish his right to the property itself, or to enforce some equitable claim upon it, having been substantially benefited, is required, upon principles of justice and equity, to repay the amount expended. If a tenant for life, holding under a will, expends money in completing permanently beneficial improvements to the property, which had been commenced by the testator, such an outlay is held to constitute a valid claim for reimbursement against the reversioner, and an equitable lien upon the property as security

for its repayment; while outlays for altogether new and original improvements"—such as are averred in the present bill—"being made with full knowledge of the title, would create no such claims." 3 Pom. Eq. Jur. (4th Ed.) § 1242. The reason given for the rule is that the life tenant does not hold adversely to the remainderman or reversioner, and must therefore be held to have made improvements merely with a view to enjoying them so long as the life estate continued, or to have intended them for the benefit of the remainderman. 16 Am. & Eng. Encyc. Law (2d Ed.) 118, where the cases are cited. And this court in Pickett v. Pope, 74 Ala. 132, said:

"Apart from the influence of the statute [referring to the statute, sections 2951–2954 of the Code of 1876, allowing the value of his improvements to an adverse holder for three years or more] it is well settled, upon principles too well defined to require discussion, that improvements put on land by a life tenant, during his occupancy, constitute no charge upon the land, but pass to the remainderman."

There is no averment that complainant claimed more than a life estate, nor could there have been any plausible basis for such claim. On the facts averred, it may very well be that complainant made the improvements in question for account of himself and his son, whom, it is averred, he considered to be the owner in remainder. If it be conceded that he intended to improve the estate for the sole benefit of the remainderman, his son, then in life and prospective taker under the will, his false assumption that there was a vested estate in remainder—whereas in law and fact the interest of his son in remainder was contingent upon the failure of a conveyance in fee executed in virtue of the power vested in the executor prior to the falling in of the life estate—will not suffice to create a claim against the reversion for improvements. Cleland v. Clark, 81 Am. St. Rep. 182, note. These conclusions are supported by the great weight of judicial opinion, the cases being collected in a note to the text of 21 Corpus Juris, supra. The rule has been relaxed in some cases. Thus it is held that where improvements of a permanent character are made by compulsion, as in the case of municipal improvements to be paid for by taxation, the cost should be apportioned between the life estate and the remainder or reversion according to the benefit accruing to each. Troy v. Protestant Episcopal Church, 174 Ala. 380, 56 South. 982, Ann. Cas. 1914B, 815. And in some circumstances the rule is still further relaxed, as where buildings become untenantable without neglect on the part of the life tenant, or where, by reason of changed conditions, improvements are considered necessary, or in order to obtain a reasonable return from property which is unproductive. In re Whitney, 75 Misc. Rep. 610, 136 N. Y. Supp. 633, where the New York cases in support of this relaxation are cited. But we venture to doubt that the decision of the Surrogate's Court in that case finds support in the cases cited from the Court of Appeals, viz. Chamberlin v. Gleason, 163 N. Y. 214, 57 N. E. 487, and Stevens v. Malcher, 152 N. Y. 551, 46 N. E. 965. At any rate, our conclusion is that the courts generally have laid down the correct rule, and should be followed.

The conclusion noted above and the decision in Bingham v. Sumner, 206 Ala. 266, 89 South. 479, suffice, in principle, to dispose of the contention that complainant, as administrator—we have heretofore spoken of him as complaining in his own right—should be compensated for improvements. Further discussion would serve no purpose. Our opinion is that the decree of the circuit court, in equity, should be affirmed.

Affirmed.

All the Justices concur, except THOMAS, J., who dissents, and ANDERSON, C. J., not sitting.

GARDNER, J. (concurring specially). As to the proper construction of the will of Ada H. Sumner, I was in full accord with the dissenting views of Justice Thomas, as set forth in Bingham v. Sumner, 206 Ala. 270, 89 South. 479 et seq., and still adhere thereto, fully agreeing upon this question with his dissenting opinion in the instant case.

However, I do not understand that the present proceedings involve the integrity of the decision of the majority on former appeal, but am of the opinion the bill here under review is to be considered as filed upon the assumption that the question of title was settled in the former litigation.

I therefore think that the doctrine of stare decisis should be here applied. 4 Mayfield Digest, 843.

I concur in the conclusion of the majority opinion.

BOULDIN, J. (concurring). In Sumner v. Bingham, 206 Ala. 266, 89 South. 479, all questions of title to the lands here involved were adjudicated as between Martin T. Sumner and Rosemary Bingham. This included all title of Martin T. Sumner as devisee under the will of Ada H. Sumner and as heir at law of Percy H. Sumner, deceased.

In the present suit, the administrator of the estate of Percy H. Sumner, deceased, is joined as party complainant. It may be conceded that the former decree would not be res adjudicata as against such administrator seeking to recover assets for the payment of the debts of decedent. But the record here shows no such relief sought. The sole relief sought is in favor of Martin T. Sumner, the life tenant. It appears the administrator is brought in as a proper party on the accounting in his interest. Hence, in my

opinion, the former decree is conclusive on all questions of title involved in this suit.

Any opinion of mine on the proper construction of the will of Ada H. Sumner, or on the several questions presented in the divergent views of my Brothers growing out of such construction, would therefore be dictum merely.

For these reasons, I prefer to remain uncommitted on such questions. Otherwise I concur in the decision of the majority.

THOMAS, J. (dissenting). Mrs. Ada Sumner's will is of date July 25, 1894, and that of her death is April 13, 1899. The will was duly probated, and the land in question has since been in the possession of Martin T. Sumner, the husband, and Percy H. Sumner, a ·child, of testatrix. The latter died intestate, leaving no wife or children. At the date of Mrs. Sumner's death two children survived—Percy H. and Martin T. Sumner, Jr. The latter died while an infant.

No question of res adjudicata is presented under the present bill by Mr. Sumner, as administrator of Percy H. Sumner, deceased, and as an individual. To support such a defense not only must (1) the parties and the subject-matter be the same, but (2) the judgment in the first case must have been on the merits, and must be that sought to be interposed in bar of the second suit. Terrell v. Nelson, 199 Ala. 436, 74 South. 929. The parties in Bingham v. Sumner, 206 Ala. 266, 89 South. 479, were Martin T. Sumner and Rosemary Bingham; here they are "Martin T. Sumner, individually, and Martin T. ·Sumner, as administrator of the Estate of Percy H. Sumner, deceased," as complainants "against Rosemary Bingham, Ellison H. Bingham, and E. L. Clarkson," as defendants. The subject-matter of the first suit was to remove a cloud from title and construe Mrs. Sumner's will; here it is to enforce an equitable rule as to accounting between owners for valuable improvements. Schillinger v. Leary, 201 Ala. 256, 77 South. 846.

It is thus necessary to re-examine the nature of the title and possession of Martin T. Sumner and his son, Percy. We have expressed the views of Mr. Justice Gardner and the writer in Bingham v. Sumner, 206 Ala. 266, 89 South. 479, to the end that the children of testatrix Sumner, at her death, had a vested estate in the land under the mother's will, subject to the trust created in the will. The majority of this court proceeded on the theory that said children had only a contingent remainder therein, which was defeated by their respective deaths before that of the father.

We believe the following are pertinent inquiries: If Mrs. Sumner died intestate (1) how could Rosemary Bingham take an interest in the estate, since Mrs. Sumner, if intestate, left children and a husband within the statute of descent and distribution? and (2) if she died testate, how could said Bingham take against the express terms of the will?

Before proceeding with the discussion, it should be observed that it is beyond dispute (1) that Mrs. Bingham claims ownership ˙by virtue of the statute of descent and distribution as the heir at law of Mrs. Sumner; (2) that Mr. Martin T. Sumner claims by inheritance from his deceased children, who died intestate, without having married; and (3) that the majority opinion declares that the question at issue, "more narrowly stated, is whether the children (of Mrs. Sumner), under the law of the will left (held) an inheritable estate in the lands."

The majority, after having discussed the provisions of the will and some of the authorities, concluded the opinion as follows:

" * * * That the will in this case was intended to vest in the children of testatrix (or their children) who should survive the life tenant, only such part of her estate as might survive the life tenant's power of disposition. * * *

" * * * Testatrix did not anticipate, nor did she make provision for, the contingency that has happened, i. e., the death of her children before her husband. The result is that her property, after the life estate given to her husband, whethér by the will or by statute is immaterial just now, will descend to her blood —a circumstance usually considered as of some significance in the construction of wills—to appellant."

It will be observed that that opinion fails to indicate or declare the time when it must be determined what individuals were the heirs at law of the testatrix; and that it proceeds on the assumption that this time of determining who were Mrs. Sumner's heirs at law was (a) the date of the death of her surviving child, Percy, and (b) not the date of the death of the testatrix. This is contrary to the decision announced by the majority on rehearing in Trustees, etc., v. Caldwell, 203 Ala. 590, 595, 84 South. 846, and by an undivided court in Rosenau v. Childress, 111 Ala. 214, 20 South. 95. These cases have not since been questioned. The fee did not rest in abeyance. The will, speaking at the death of the testatrix (under the construction given it by the majority), did not provide against the failure of the contingencies indicated. Blakeney v. Du Bose, 167 Ala. 627, 634, 637, 52 South. 746; Taylor v. Harwell, 65 Ala. 1, 11.

It must be taken, under the construction that has been given Mrs. Sumner's will, that contingent remainders were declared in the two children by the will; and it follows that the husband should have been held to have had an estate in fee simple. What else had become of the title pending and on failure to vest contingent remainders? As we have observed, the fee did not rest in abeyance. 1

Tiffany on Real Property (2d Ed.) p. 509, § 141. Mr. Tiffany there says:

"Where a contingent remainder in fee simple is created by a conveyance at common law, as distinct from one taking effect under the statute of uses, the reversion in fee, according to some authorities, remains in the grantor until the remainder vests; while by other authorities it is considered that the fee is 'in abeyance'—that is, that no person has the fee—until the condition precedent is satisfied, and that there is a mere possibility of reverter in the grantor. In the case of a contingent remainder in fee simple created by a conveyance operating under the statute of uses or by devise, there appears to be no question that the fee, until the remainder vests, is in the grantor, or, in the case of a devise, in his heirs, or residuary devisees, or it might be, it seems, in a specific devisee."

In Fearne on Remainders, p. 351, c. 6, it is stated:

"I. (a) First I shall observe that where a remainder of inheritance is limited in contingency by way of use, or by devise, the inheritance in the meantime, if not otherwise disposed of, remains in the grantor and his heirs, or in the heirs of the testator, until the contingency happens to take it out of them." Stanley v. Stanley, 16 Vesey, 490, 511—12.

In Washburn on Real Property, vol. 3 (6th Ed.) pp. 487, 488, in dealing with the subject "to whom lapsed devises go," it is said:

"But a devise which fails by lapsing does not go to the residuary devisee, but to the heir at law of the testator, on the ground that the intent of the testator is to be taken as things stood when the will is made, and that he is not to be presumed to have intended to give to his residuary devisee what he had already given to one whom he expected to survive him, and what he would have taken if the will had taken effect at its date. * * * The weight of American authority, however, is in favor of such devises going to the testator's heirs, on the ground that a residuary devisee of real estate takes only what was intended for him at the time of making the will, though a different rule prevails in respect to personal estate; and, consequently, though the devise may not take effect from the disability on the part of the devisee to take, the estate devised will go to the testator's heirs at law."

And:

"Where a contingent remainder is devised, the fee descends to the heir, and when the contingency happens the heir's estate opens to let in the remainder." Peterson v. Jackson, 196 Ill. 49, 63 N. E. 646; Washburn on Real Property, vol. 3 (6th Ed.) p. 551, § 1596; 4 Kent, Com. 388, 389.

In 40 Cyc. 1942, the text is:

"The heirs or next of kin, at the death of the testator, and their representatives, take, and accordingly the husband or wife may take under statutes giving him or her a distributive share in case of intestacy." Rosenau v. Childress, 111 Ala. 214, 20 South. 95; North v. Graham, 235 Ill. 178, 85 N. E. 267, 18 L. R. A. (N. S.) 624, 629, 126 Am. St. Rep. 189.

The question is thus stated by Mr. Gray, in his The Rule Against Perpetuities (2d Ed.) § 11, p. 5, and the note to the text, which is well supported by authorities:

"A future estate may be indirectly created by giving livery of seisin for one or more life estates, without an ultimate remainder in fee. The estate remaining in the former owner ready to come into possession on the termination of the life estate or estates is a reversion. The same result is reached when an ultimate remainder in fee is contingent. Until it vests, there is a reversion in the feoffor and his heirs. The transfer of remainders and reversions already existing is considered.

"When a conveyance is by way of use or devise, there is, unquestionably, during the contingency of a remainder in fee, a reversion in the grantor or devisor and his heirs; and the prevailing opinion seems to be the same way upon a feoffment at common law. Plunket v. Holmes, 1 Lev. 11; 1 Sid. 47; T. Raym. 28; Purefoy v. Rogers, 2 Wms. Saund. 380, 382, and note; Carter v. Barnardiston, 1 P. Wms. 505, 511–518; Egerton v. Massey, 3 C. B. (N. S.) 338, 358; Co. Lit. 191a, Butler's note; Fearne, C. R. 360–364; Wms. Real Prop. (18th Ed.) 333. See Bigley v. Watson, 98 Tenn. 353, 39 S. W. 525, 38 L. R. A. 679; Contra, see 40 Edw. III, 9b; Co. Lit. 342b; 2 Prest. Abs. 101–107; Cornish on Rem. 175–178; 4 Kent Com. 257–260; Bohon v. Bohon, 78 Ky. 408."

It is unnecessary to advert to the statement of the law that an estate in reversion is the residue of an estate left in the grantor, to commence in possession after the determination of some particular estate granted out of him. See the definitions contained in 21 C. J. pp. 1016, 1017, note 19 [a], and the text on page 1018, § 181, as to reverter. It is there said:

"A reversion is never created like a remainder by deed or writing or other act of the grantor who creates it at the very time when the particular estate is created, but arises by construction and operation of law wherever a grantor has conveyed less than his whole interest or estate, the undisposed portion being his when the grant is terminated. The particular estate which precedes and supports the reversion may be either an estate tail when such an estate is recognized, an estate for life, or a lease for years created by an owner in fee, a life tenant, or a tenant for years."

So, if the contingent remainder fails, the heirs at law must be ascertained at the date of the death of testatrix.

The foregoing principles, applied under the majority opinion, would require the holding that the title to the lands was in Mr. Sumner for the reasons: (1) The life estate was in Mr. Sumner; (2) the contingent remainder was in the two children (of testatrix and Mr. Sumner) at the death of Mr. Sumner; (3) subject to the life estate, the legal title in the two children, Martin T. Sumner, Jr., and

Percy H. Sumner, was subject to be defeated by the happening of the contingency indicated; (4) upon the death of Martin T. Sumner, Jr., as an infant, the possibility of a vested interest in such child ceased or was defeated, and the legal title to a one-half interest went, under the statute of descent, to the heirs at law of such child (they being the appellant, Martin T. Sumner, the father, and Percy H. Sumner, the brother), subject to be defeated by the contingency of Percy's surviving the father; (5) upon the death of Percy H. Sumner (intestate, and without leaving wife or children), the possibility of said contingent remainder taking effect became extinct, and no title could ever divest the title existing in the next of kin.

The legal title of such survivor of Mr. Sumner's children (as heir or next of kin, and not as devisee) passed under the statute by inheritance to the father (Martin T. Sumner), who thus acquired the "entire legal title," which could not be divested out of him, "because the contingency set forth in the will could never happen." This is in accord with our express authorities on the point of "time when" those who took as next of kin must be determined—at the death of testator, not when the contingency failed. Rosenau v. Childress, 111 Ala. 214, 20 South. 95; Trustees, etc., v. Caldwell, 203 Ala. 590, 595, 84 South. 846. The better statement of the rule is:

"If an intestacy occurs by reason of the failure of a contingent remainder, where there is no limitation over, the next of kin and heirs [at law] entitled to take the estate are to be ascertained as of the date of the death of the testator, and not at the date of the determination of the contingency; and the fact that the person to whom the prior estate was given, though his death was to precede the ultimate limitation, is himself an heir, does not change the result." Bell's Estate, 147 Pa. 389, 23 Atl. 577; Miller v. Miller. 10 Metc. (Mass.) 393; Kingsbury v. Scovill, 26 Conn. 349; Armstrong v. Grandin, 39 Ohio St. 368.

As we have indicated, the general authorities are agreed that the time of determination of heirs at law was at the date of testatrix's death. If she died intestate, as to the contingency indicated it was at her death, she did not become intestate at some other time. It merely became known at the death of Mr. Percy H. Sumner that she was intestate— under the interpretation given the will by the majority. Against such contingency the law of force on the date of her death had provided that the heirs at law or next of kin should take the lapsed legacy or devise. The general authorities are collected in Tiffany on Real Property, vol. 1 (2d Ed.) p. 510, § 141; Fearne on Remainders, c. 6, p. 351; 2 Washb. on Real Property, 263; Harrison v. Weatherby, 180 Ill. 418, 54 N. E. 237. We are dealing with a case of a lapsed legacy or devise.

"A lapsed legacy or devise is one which, although good and capable of taking effect at the time when the will was made, and never revoked by the testator, fails to take effect by reason of something which has occurred between the time of the making of the will and the time when the gift under the will would otherwise vest." 40 Cyc. p. 1925; Bond v. Moore, 236 Ill. 576, 86 N. E. 386, 19 L. R. A. (N. S.) 540, 546.

However, it was provided by statute at the date of Mrs. Sumner's death:

"All property not disposed of by will must be administered and distributed, as in case of intestacy, by the executor or the administrator with the will annexed." Code 1886, § 4248; Caldwell v. Caldwell, 204 Ala. 161, 85 South. 493; Trustees, etc., v. Caldwell, 203 Ala. 590, 595, 84 South. 846; Woodroof v. Hundley, 147 Ala. 287, 39 South. 907; Johnson v. Holifield, 82 Ala. 123, 2 South. 753; Carter v. Balfour, 19 Ala. 814, 830.

It may not be necessary to say that a gift over on death without children will leave a life estate in the first taker; that is—

"A gift to A., and on his death to his children, gives A. a life-estate, although not expressly limited to his life. Rosenau v. Childress, 111 Ala. 214, 20 South. 95. A gift for the use of one and his children or others is of a life estate. A gift to A. for life, with remainder over to be distributed in proportions as directed, will give A. a life estate, although the remaindermen are in fact the heirs or issue of A." 40 Cyc. p. 1622; Annotations, C. J. Cyc. (1921) p. 2711.

It would appear that on authority of Rosenau v. Childress, 111 Ala. 214, 220, 20 South. 95, Trustees, etc., v. Caldwell, 203 Ala. 590, 595, 84 South. 846, and the general authorities (40 Cyc. 1924; see, also, 49 Cent. Dig. title "Wills," § 2160), the former appeal in Bingham v. Sumner should have been affirmed. The writer should have called attention to these cases, decided, respectively, in 1895 and on June 9, 1919, before the decision in Bingham v. Sumner (May 12, 1921) 206 Ala. 266, 89 South. 479. However, Mr. Justice Gardner and the writer then and now believed the remainders were vested in Mrs. Sumner's children. It may be said that at the time of consideration on former appeal the writer did not have in mind the fact that affirmance should follow, though the interest of the children in the mother's lands was only a contingent remainder and not a vested estate, as was then urged.

The foregoing should have resulted in affirmance of former appeal, and is sufficient to warrant the declining to follow the result announced by the majority in Bingham v. Sumner, 206 Ala. 266, 89 South. 479.

The fact that the estate was devised to a trustee did not change the status, as we have stated, since the trustee, as the holder of the legal title, was merely necessary to a discharge of the trust for the purposes declared

for the beneficiaries indicated in the will. Abercrombie's Ex'r v. Heirs, 27 Ala. 489, 497; Trustees, etc., v. Caldwell, 203 Ala. 590, 84 South. 846; 1 Jarmon on Wills, 527.

Mr. Justice Sayre has adverted to cases which he believes not to be of sufficient authority on which to rest the equities of the bill. It is true the cases of Porter v. Henderson, 203 Ala. 312, 82 South. 668, and McDaniel v. L. & N. R. R. Co., 155 Ala. 553, 556, 46 South. 981, were cases of joint tenancy, and these cases are not in exact analogy to the facts averred. However, if Percy H. Sumner inherited from his brother, and the father from the children, and the administrator is before the court, asking an accounting for improvements made by Percy H. Sumner under the bona fide belief of his title or ownership to any part or all of these lands, the writer ·is of the opinion that the justice and law of the case should warrant such accounting.