Anderson vs. Coburn.

## ANDERSON VS. COBURN.

JURISDICTION: (1.) *Complaint must be filed before publication of summons, to give jurisdiction of non-resident defendant.* (2.) *What constitutes a general appearance, and waiver of defective service, after judgment.* (3.) *Such waiver does not bind defendant's intermediate grantee of land attached in the action.*

(4.) ESTOPPEL in pais. (5.) HOMESTEAD: *Rights of widow therein after re-marriage.*

1. Where the complaint in an attachment suit was not filed until two weeks after an order was made for service of summons by publication (which recited that the complaint was filed on the day of its own date), and the last publication of the summons was less than six weeks after such filing (R. S. ch. 134, sec. 10): *Held,* that the service was not sufficient to give the court jurisdiction, and the judgment was void.
2. Where a defendant not duly served appears after an execution sale under a judgment in the cause, and moves to set aside the judgment and execution, not only because of the defective service, but for lack of proof of certain facts essential to his liability, and for excess of damages, this is a *general* appearance, and cures the defect of jurisdiction.
3. But where said defendant, *before such appearance,* conveyed the land sold on execution (and which had previously been seized on a warrant of attachment in the cause), the judgment not being a lien upon the land at the time of such sale, his subsequent appearance will not divest the title of his grantee.
4. Where the wife of the true owner of land acted as agent for another person in negotiating a sale from the latter to defendant, without notifying defendant that she or her husband claimed any interest in the land, but it does not appear that she then knew of her rights, nor that

defendant relied upon her representations : *Held,* that she was not estopped from setting up her claim after her husband's death.

5. The widow, after re-marrying, cannot recover land of her former husband of which defendant is in possession, on the ground that it was the homestead; but she may recover the rents and profits from the death of her former husband to the time of her second marriage, less the value of permanent improvements made by defendant.

APPEAL from the Circuit Court for *Douglass* County.

Ejectment, by *Sarah B. Newton,* claiming as widow of John M. Newton, deceased. The land is alleged to have been the homestead of said John M. Newton and his family prior to his decease. The defendant claimed as purchaser at a sale under an execution in a certain attachment suit in said court, brought by one Field against one William H. Newton. John M. Newton's title was by purchase from said William H. Newton, prior to said execution sale, but subsequent to the judgment in said attachment suit. The circuit court held that in the action of *Field v. Newton,* the service of summons by publication was void, because the complaint was not filed until after such publication was commenced; that the judgment in that action was void at the time of its rendition, and was not a lien upon the premises here in suit at the time they were conveyed by William H. Newton to John M. Newton; that subsequently William H. Newton appeared in the cause and submitted himself to the jurisdiction of the court, but the decision of the court upon his motion did not bind or affect John M. Newton or his widow, or the property in their hands; that the present plaintiff was, however, estopped, by certain acts and representations of hers, from setting up title to the premises as against the defendant herein. Judgment was accordingly rendered for the defendant; and the plaintiff appealed.

After the judgment was rendered, the plaintiff intermarried with one Anderson, and prosecuted her appeal by the name of *Sarah B. Anderson.*

Anderson vs. Coburn.

The other facts necessary to an understanding of the opinion of this court, will appear from the opinion.

*Henry N. Setzer*, for appellant, as to the question of estoppel *in pais*, argued that, in order to create such an estoppel, there must be a representation made by the party estopped, *with the intent of inducing* another innocent party to do an act injurious to himself, and that party must have acted in full reliance upon such representation (2 Parsons on Con., 5th ed. 801; *Welland Canal Co. v. Hathaway*, 8 Wend. 483, 484; *Newman v. Edwards*, 34 Pa. St. 32; *Waters's Appeal*, 35 id. 523; *B. & W. R. R. Co. v. Sparhawk*, 5 Met. 469; *Brewer v. R. R. Co.*, id. 478; *Lawrence v. Brown*, 1 Seld. 401; *Freeman v Cooke*, 2 Exch. 654; *Dezell v. Odell*, 3 Hill, 215), and both the intention to influence and the actual influence must be clearly made out (*Howard v. Hudson*, 2 Ellis & Bl. 1; *Patterson v. Lytle*, 11 Pa. St. 53; *Calhoun v. Richardson*, 30 Conn 210); that an estoppel as to real estate cannot arise where the party injured is acquainted with the state of the title (*Wilton v. Harwood*, 23 Me. 131; *Gray v. Bartlett*, 20 Pick. 186), and whatever is sufficient to put a reasonable man on inquiry, is notice to him of the vendor's title (*Epley v. Witherow*, 7 Watts, 163); and that the real owner must have had a knowledge of his rights. *Watkins v. Peck*, 13 N. H. 360; *Casey v. Inloes*, 1 Gill, 430.

*Masterson & Simons* for respondent, contended that the judgment in *Field v. Newton*, having been rendered by a court of record having jurisdiction of the subject-matter and never appealed from, reversed or set aside, cannot be impeached in a collateral action (*Kipp v. Fullerton*, 4 Minn. 473; *Foot v. Stevens*, 17 Wend. 483; 21 id. 40; 1 Hill, 139; 18 Pick. 393; 22 Me. 128; 32 Ala. 68; 14 Ga. 89; 6 Eng. (Ark.) 519; 3 Pa. St. 68; 10 Peters, 449; 6 id. 729; 2 How. (U. S.) 319; 2 Wallace, 210; Smith's L. C. (6th Am. ed.) 995, 1014; 2 id. 719, note); that the provisions of the statute requiring the complaint to be filed before publication of

summons is merely directory; that William H. Newton having subsequently appeared and submitted himself to the jurisdiction of the court, the decision of the court holding the judgment valid was, as between the parties to that suit, *res adjudicata*, and cannot be attacked in a collateral action (*N. A. R. R. Co. v. Combs*, 13 Ind. 490; *Abbott v. Semple*, 25 Ill. 107; *Ulmer v. Hiatt*, 4 G. Greene, 439; *Clark v. Blackwell*, id. 441; *Fee v. Iron Co.*, 13 Ohio St. 563; *Gemmell v. Rice*, 13 Minn. 400; *Fulbright v Cannefox*, 30 Mo. 425; *Campbell v. Moore*, 3 Wis. 767; *Stonach v. Glessner*, 4 id. 278; *Allen v. Lee.* 6 id. 478; *Barnum v Fitzpatrick*, 11 id. 81; *Tallman v. McCarty*, id. 401; *Upper Miss. Co. v. Whittaker*, 16 id. 221); that the attachment was a valid lien upon the property, and continued to be so until a valid judgment was rendered; and that after a valid attachment and a valid judgment, a sale in due form of the property attached gave the purchaser a perfect title. Laws of 1856, ch. 120, sec. 145; *Carney v Emmons*, 9 Wis. 114; *Mattingly v Boyd*, 20 How. (U. S.) 128; *Lackey v. Seibert*, 23 Mo. 85; *Cockey v. Milne*, 16 Md. 200; Drake on Attachments, §§ 221, 224, 233, and cases cited. As to the estoppel *in pais* they contended that, so far as affects this case, *Coburn* was bound to examine the title of Vaughn (the purchaser at the execution sale) only to ascertain how it was affected by the rights of the plaintiff, and he was not guilty of negligence in not making such examination, if her words and conduct were such as to notify him that she had no rights therein; that he would be justified in supposing that she knew what her rights were, and inferring from the fact that she made no claim, and from her whole conduct, that she had no right to the property. *Storrs v Barker*, 6 Johns. Ch. 166; *Cook v. Finkler*, 9 Mich. 131; *Cady v. Owen*, 34 Vt. 598; *Philhower v. Todd*, 3 Stockt. 312; *Troxell v. Lehigh Co.*, 42 Pa. St. 513; *Taylor v Elliott*, 32 Mo. 172; *Rider v. Union Co.*, 4 Bosw. 169; *Lucas v. Hart*, 5 Clarke (Iowa), 415; *Tilton v. Nelson*, 27 Barb.

595; *Barnes v. McKay*, 7 Ind. 301; *Wells v. Pierce*, 7 Foster, 503; *Davis v. Tingle*, 8 B. Monroe, 539; *Roe v. Jerome*, 18 Conn. 138; *Middletown Bank v. Jerome*, id. 443; *Rangeley v. Spring*, 8 Shep. 130; 4 Watts & Serg. 323; *Kurtz v. Bank of Columbia*, 2 Cranch C. C. 701; *Cary v. Wheeler*, 14 Wis. 281; *Peabody v. Leach et al.*, 18 id. 657; *Miner v. Medbury*, 6 id. 295.

COLE, J.    The circuit court found as a conclusion of law, that the judgment in the case of George Field against William H. Newton was, at the time of its rendition, void, and did not become a lien upon the premises in question.    And we think that this conclusion was fully warranted by the fatal defects in the proceedings in that cause.    The record in the case of *Field v. Newton* shows that the summons was served by publication as in case of non-resident defendants having property within the state.    The order of publication was made on the 21st day of December, 1857, and stated that the complaint therein was filed in the office of the clerk of the county court of Douglas county, on that day. The complaint was not in fact filed in the office of the clerk until the 8th day of January, 1858.    And the last publication of the summons was made in the weekly newspaper issued on the 2d day of February, 1858.

Section 40 of the code of procedure, which was in force at the time the action was commenced, and which regulated the service of summons, provided that "in all cases where publication is made, the complaint shall be first filed, and the summons as published shall state the time and place of such filing."    The same section further provided that the order should direct the publication to be made in one newspaper to be designated as most likely to give notice to the person to be served, and for such length of time as should be deemed reasonable, "*not less than once a week for six weeks.*"    Now, the language of the statute is clear and imperative, that the summons should be published not less than once a

week for six weeks; that such published summons should state the time and place where the complaint was filed; and that in all cases the complaint should be filed before the publication commenced. These things were made indispensable in order to give the court jurisdiction where service was made by publication. It is an elementary principle, that where jurisdiction is acquired by publication, the provisions of the statute regulating the mode of service must be strictly complied with. It is said that the object of requiring the complaint to be filed in the office of the clerk of the court is, that the defendant may know where to find it, and that if it is filed at any time before the publication is complete, and before the expiration of the time to answer, the reason and spirit of the enactment are satisfied. But the answer is, that the law makes it an essential pre-requisite to this mode of service that the "*complaint shall be first filed.*" No publication is good until that is done. And there is reason in this requirement. Suppose the defendant had seen the published summons, and had written to the clerk for a copy of the complaint before it was filed, in order that he might know what the cause of action was, and prepare his defense. Of course he would not have obtained a copy of the complaint, nor been furnished with the means of information as to the nature of the claim made against him. We therefore think the judgment was void at the time of its rendition, on account of the omission to file the complaint before or when the publication of the summons commenced, as required by law.

On the same day the order for the publication of summons was made, a warrant of attachment was issued in the action, and the real estate of the defendant, that is, the property in question, was attached. In the early part of March, 1858, judgment was entered by default, and the property attached was sold on an execution.

The record shows that the defendant Newton, after the sale, appeared and moved to set aside the judgment and the sale upon the execution, basing his motion on several grounds. It is claimed that this was a general appearance in the cause, and cured all defects in the publication of the summons and omission to file the complaint in the clerk's office when the publication commenced. We have no doubt that the appearance of William H. Newton was a general appearance, and rendered the judgment valid so far as he was concerned. It was not a special appearance to set aside the judgment solely for the irregularity in the publication of the summons and filing of the complaint. But he also moved to set aside the judgment because there was no proof in the case showing that he was liable on the bill of exchange, and because there was an excess of damages included in the judgment. This was certainly attacking the case upon the merits, and asking the court to review and set aside the judgment because rendered upon insufficient evidence. It was submitting himself to the jurisdiction of the court in the fullest manner, and he must therefore be deemed to have waived all objections to the filing of the complaint and service of summons. Those objections were manifestly no longer available, and the original defects in the service of process were cured. This position is fully sustained by the authorities cited on the fourth point of the brief of counsel for the respondent.

It further appears, that on the first day of June, 1858, William H. Newton conveyed the real estate attempted to be attached in the suit of Field against him, to John M. Newton, the husband of the plaintiff. This was before Newton made the motion in that cause to set aside the judgment which we have held amounted to a general appearance. And the question is, What was the effect of this appearance under the circumstances? We have already said, in substance,

that it cured all defects in the service of process, and rendered the judgment valid as between the parties to the suit. But could it affect the rights acquired by John M. Newton by the conveyance previously made by the judgment debtor ? It appears to us not. The attachment attempted to be made was void for the reasons already given. The court acquired no jurisdiction of the person of the defendant until he made an appearance, and consequently there was no valid lien upon the property when John M. Newton took his deed. It is said by the counsel for the defendant, that the effect of the attachment was to hold the property attached until a valid judgment in the action was obtained. But there was no valid attachment, because there was no proper publication of the summons upon which the validity of the attachment depended. If William H. Newton had not subsequently appeared and submitted to the jurisdiction of the court, the judgment would have been void even as to him. But his appearance, although it might cure the original defects so far as he was concerned, yet could not affect the rights of third parties in the property acquired before this time. This was decided in *Whitney v. Brunette*, 15 Wis. 62. So that, notwithstanding the attachment, William H. Newton could sell and convey the property in June, 1858, and the purchaser would acquire a good title.

And this brings us to a consideration of the question of estoppel. The court below found that the plaintiff was estopped from asserting any title to the property, on account of representations made by her to *Coburn* when the latter was negotiating for it. We have carefully considered all the evidence bearing upon the question of estoppel, and we think it fails to sustain the conclusion of the circuit court upon that point.

In the first place, we think the evidence even of *Richard G. Coburn* himself fails to show that the plaintiff made any representations in respect to the title of the prop-

erty, which he relied upon when he purchased it.   He details the conversations he had with her when he made the purchase.  She acted as the agent of Vaughn, the purchaser at the execution sale.   And *Coburn* says: "In buying the property in question, I relied upon the warranty of Mr. Vaughn contained in his deed.  I never examined the title, nor know for certain that others examined it for me.  If Vaughn had not given me a warranty deed, I would have examined the title closer than I did.   If Mr. Vaughn had offered me a quit-claim deed, I would not have bought the property on the mere representations of Mrs. Newton, without examining what the quit-claim was good for."   This testimony was called out on the cross-examination of the defendant, and although he testified on his direct examination that he did not know, when he was treating with the plaintiff for the sale of the premises, that she claimed any interest in them, and also that he was led to believe from her conduct and representations that Vaughn's title was perfect, yet we think his testimony fails to show that he was induced to purchase the property by any representations made by her.  He doubtless relied upon the covenants in his deed, and not upon anything she said or did in respect to the title.  Besides, all the defects in Vaughn's title were matters of record, and the defendant could have easily discovered them upon examination of the proceedings in the case of *Field v. Newton*.  He says that he knew of the existence of that suit, and that Vaughn's title arose out of a sale upon an execution in that cause.   The means of information were open to him, and he would undoubtedly have examined into the condition of the title, had he not relied upon the covenants in the deed.  We therefore do not think there is any ground for assuming, even upon the defendant's own testimony, that he was induced to purchase the property relying upon any statements or representations made by the plaintiff in respect to the title.   She and her sister, Miss Dolby, on some

material points contradicted the testimony of the defendant. But we shall not dwell upon the evidence. It certainly fails to show that the plaintiff is estopped from maintaining the action. True, in her interviews with the defendant, she did not inform him that she claimed an interest in the premises, and that they really belonged to her husband when sold upon the execution. But she surely ought not to be estopped by her silence, when she was probably ignorant of her rights, and knew no more about the title than the defendant. Besides, it does not appear that she said any thing to the defendant which was calculated to mislead him, or which in fact did mislead him, and which he acted upon in making the purchase.

The plaintiff, as the widow of John M. Newton, sued to recover the premises as their homestead. She has since married again, and is therefore not entitled to recover the property. She is, however, entitled to recover the rents and profits to the time of her marriage, less the value of the permanent improvements made by the defendant.

*By the Court.*—The judgment of the circuit court is reversed, and the cause remanded for further proceedings in order to ascertain the amount the plaintiff is entitled to recover upon the basis above stated.