# Wilmerding *v.* The Corbin Banking Co. (Two Cases.)

*Attachment Suit.*

1. *Amendment of judgment nunc pro tunc.*—An amendment of a judgment *nunc pro tunc* is intended to make the judgment speak the truth, so as to make it show what the judicial action really was; and such amendment can not be resorted to for the purpose of correcting judicial errors or supplying judicial non-action, however erroneous may be the judgment as rendered.

2. *Attachment against non-resident; levy of attachment not sufficient to confer jurisdiction.*—The seizure of property under

[Wilmerding v. The Corbin Banking Co.]

a writ of attachment is not alone sufficient to give the court issuing the writ jurisdiction of the attachment suit, since the attachment is incidental to and dependent upon the right of the plaintiff to recover the judgment against the defendant; and, therefore, in an attachment suit against a non-resident, unless the court issuing the attachment has acquired jurisdiction of the person of the defendant by the issuance of the notice required by the statute (Code, § 531), and it also has jurisdiction of the cause of action and the subject matter of the suit, the mere levy of the writ of attachment upon the property of the defendant does not confer. jurisdiction, or authorize a personal judgment against the defendant, or the condemnation of the property levied upon to the payment of the plaintiff's claim.

3. *Same; validity of judgment.*—In an attachment suit against a non-resident, where the property of the defendant in the suit has been levied upon under the writ of attachment, a judgment of condemnation and sale of the property so levied upon, which does not show that the statute requiring notice to be given to the defendant by publication (Code, § 531). was complied with, is void and without effect.

APPEAL from the City Court of Talladega.

Tried before the Hon. G. K. MILLER.

These two cases, growing out of the same litigation, are submitted and decided together. The facts relating to each of the cases are sufficiently stated in the opinion.

H. L. McELDERRY, for appellant.—The court was without authority to amend a judgment *nunc pro tunc,* as was done in this case.—1 Black on Judgments, § 185; *Windsor v. McVeigh,* 93 U. S. 274; *Gunter v. Lamar,* 39 Ala. 324; *Browder v. Faulkner,* 82 Ala. 257. The court. was without jurisdiction to render judgment by default against the defendant. The levy of the judgment in the present case was not sufficient to confer such jurisdiction—Code of 1896, §§ 536, 561, 565; Const. Art. XIV.; *Blossom v. Estes,* 84 N. Y. 617; 2 Freeman on Judgments, § 611; *Weir v. Peebles,* 60 Ala. 416; Cooley Const. Lim., 496; *Bank v. Clements,* 109 Ala. 270; 1 Freeman on Judgments, §§ 185, 217; *Finley v. Sands,* 29 Ala. 138. The judgment as rendered is

not valid.—*Pennoyer v. Neff*, 95 U. S. 714; Freeman on Judgments, § 611; *Windsor v. McVeigh*, 93 U. S. 274.

KNOX, BOWIE & DIXON, *contra.*—"When jurisdiction has been attached the court has a right to decide every question in the case, and errors of judgment or irregularities, however gross, which do not render a judgment void are not available on collateral attack. * * * * And every presumption is in favor of the regularity of the proceedings of courts of general jurisdiction."—12 Enc. Pleadings & Practice, 196; *Robinson v. Allison*, 97 Ala. 596; *Pettus v. McClannahan*, 52 Ala. 57; *White et al. v. Simpson*, 107 Ala. 392; *Ellis v Martin*, 60 Ala. 394.

Defects and irregularities in the attachment bond, affidavit and writ, however gross, under our very liberal Statute of Amendments, and the decisions thereunder, will not render the judgment void on collateral attack.—*Blair v. Miller*, 42 Ala. 308; *Ellis v. Martin*, 60 Ala. 393; *Moore v. Chaffey Bros. & Co.*, 75 Ala. 387.

The seizure of property in attachment against non-residents partakes more of the nature of an action in *rem* than in *personam*, because in such an action no personal judgment can be obtained against the defendant, and the judgment avails nothing beyond the amount of the property attached.—*Copper v. Reynolds*, 10 Wall. 300; *St. Clair v. Cox*, 106 U. S. 380; *Ex. Nat. Bank v. Clements*, 109 Ala. 279; *Soulard v. Vacuum Oil Co.*, 109 Ala. 387.

The plaintiff being named in the bond as a partnership composed of Corbin & Edgell, in the affidavit as the Corbin Banking Company, in the complaint as the Corbin Banking Company, a body corporate, and in the judgment as the Corbin Banking Company, a body corporate, cannot avoid the judgment on collateral attack. The Corbin Banking Company, whatever it was, whether corporation, partnership or individual, is throughout all the proceedings the same party, and words describing it, or misdescribing it, are merely words of description.—*Ex parte Nicrosi*, 103 Ala. 104; *Rosen-*

*burg v. Clafflin Co.*, 95 Ala. 252; *Western R. R. Co. v.. Sistrunk*, 85 Ala. 249; *B'ham L. & A. Co. v. Bank*, 100 Ala. 249; *Foreman v. Weil Bros.*, 98 Ala. 496; *Ortez v.. Jewett*, 23 Ala. 662; *Seymour & Son v. The Thomas Harrow Co.*, 81 Ala. 250; *Birdshaw & Co. v. Comer & Co.*, 108 Ala. 617; *Blackmon v. Moore & Handley Hdw. Co.*, 106 Ala. 458; *Couch v. Atkinson*, 32 Ala. 636.

Courts may look at *ex parte* evidence which was used on the trial of the cause to prove the jurisdictional facts, and may examine the original judgment entry or the trial docket and the whole record in the case upon the motion *nunc pro tunc* to amend the judgment.— *Diston & Son v. Hood*, 83 Ala. 331; *Jones v. Howell*, 16 Ala. 695; *Whorley v. M. & C. R. R.*, 72 Ala. 20; *Browder v. Faulkner*, 82 Ala. 257; *Lily v. Larkin*, 66 Ala. 122; 1 Black on Judgments, § 135.

If from the evidence, record and quasi record it appears that a mistake has been made in the judgment, amendment *nunc pro tunc* in furtherence of justice, making the record speak the truth of the matter, must be allowed.—*Whorley v. M. & C. R. R.*, 72 Ala. 20; *Browder v. Faulkner*, 82 Ala. 257; *Lily v.. Larkin*, 66 Ala. 122.

A judgment in favor of a partnership without setting forth the names of the individual partners, is erroneous. on direct appeal, but is not void on collateral attack.— *Moore v. Watts & Son*, 81 Ala. 265; *Foreman v. Weil*, 98 Ala. 495; *B'ham L. & A. v. Banks*, 100 Ala. 249. The failure of a party after notice to demand a trial by jury or the fact that there is a variance between the amount claimed in the attachment suit and the complaint, cannot be taken advantage of, even on direct appeal, and certainly not on collateral attack.—*Decatur Nat. Improvement Co. v. Crass*, 97 Ala.. 524; *McAbee v. Parker*, 78 Ala 573; *Rosenburg v. Clafflin*, 95 Ala. 252.

HARALSON, J.—In September, 1895, The Corbin Banking Company, a non-resident of this State, sued out before the clerk of the city court of Talladega, under section 3923 of the Code of 1886, an attachment against

[Wilmerding v. The Corbin Banking Co.]

.Mrs. E. E. Wilmerding, the appellant, another non-
:resident of the State, which was returned to said city
court, and on the 13th November following, without ap-
pearance of, or personal service on, defendant, a personal
judgment was rendered against her, on what purported
.to be a non-resident publication. This attachment was
.levied by the sheriff on certain lands lying in this State,
.alleged to belong to. defendant. The judgment entry,
: after reciting the levy, proceeds: "And it being further
: shown to the court that the order of publication hereto-
fore made in this case, notifying and requiring the de-
fendant to appear and plead to or demur to the plain-
tiff's complaint in this case, was duly published in the
'News Reporter,' a newspaper published in Talladega
county, Alabama, for four consecutive weeks, commenc-
ing on the 14th September, 1895, and that a copy of said
publication was forwarded by mail to the place of resi-
dence of said defendant, and the said defendant being
now called makes default; it is therefore considered by
.the court on sworn proof submitted to the court that the
plaintiff have and recover of the defendant the sum of
:$187.65, the damages claimed in this complaint, as well
as all the costs of this case, for which let execution is-
·sue." Then follows an order of condemnation and sale
of the lands levied on, for the satisfaction of the judg-
·ment rendered, with direction to the clerk to issue to the
sheriff a writ of *venditioni exponas* to sell all the right,
:title and interest of defendant in the said lands and ap-
ply the proceeds of sale to the satisfaction of the judg-
·ment for damages and costs.

This notice is not in accordance with the require-
·ments of the statute, in such cases (Code, § 531 [2936])
which requires the clerk, after the levy, to "cause a no-
·tice of the attachment and levy on the defendant's prop-
·erty to be advertised, once a week for three consecutive
weeks, in some newspaper, a copy of which must be sent
·by mail to the defendant, if his residence is known or
can be ascertained; and if such publication is perfected
twenty days before the next term of the court, the case
:shall stand for trial at that term, otherwise at the suc-

ceeding term," etc.  This notice as here recited, instead
of following the statute, seems to have been an attempt
to follow rule 22 (25) of chancery practice as to service
on non-residents.

At a regular term of the city court in September,
1899, the plaintiff in attachment moved the court to
amend said judgment, *nunc pro tunc,* so as to make it
recite that The Corbin Banking Company, the plaintiff
in attachment, was a partnership, and to set out the
names of the partners composing the firm; to make it
further recite the notice of the attachment and levy
given, according to the requirements of said section 531
(2936), and to correct said judgment, generally, from
a personal judgment against the defendant, to one sim-
ply for condemnation and sale of the lands levied on to
pay a debt of the defendant in attachment ascertained
to be $187.65, and the costs of the proceeding.

The defendant in attachment, Mrs. Wilmerding, ap-
peared specially by attorney for the purpose only of re-
sisting this motion to amend said judgment *nunc pro
tunc.*  The judgment on the trial of this motion was
amended as proposed, to which ruling the defendant ex-
cepted, as she did separately and severally to the intro-
duction of evidence upon which the plaintiff sought to
have said judgment corrected.

The object of a judgment *nunc pro tunc* is not the
rendering of a new judgment and the ascertainment and
determination of new rights, but is one placing in
proper form on the record, the judgment that had been
previously rendered, to make it speak the truth, so as to
make it show what the judicial action really was, not
to correct judicial errors, such as to render a judgment
which the court ought to have rendered, in the place of
the one it did erroneously render, nor to supply non-ac-
tion by the court, however erroneous the judgment may
have been.—*Dumas v. Hunter,* 30 Ala. 188; *Browder v.
Faulkner,* 82 Ala. 257; *Robertson v. King,* 120 Ala.
459.  "The power to amend *nunc pro tunc* is not revis-
ory in its nature, and is not intended to correct judicial
errors.  Such amendment 'ought never to be the means
of modifying or enlarging the judgment, or the judg-

ment record, so that it shall express something which the court did not pronounce, even although the proposed amendment embraces matter which ought clearly to have been pronounced.' However erroneous, the express judgment of the court cannot be corrected at a subsequent term."—*Browder v. Faulkner, supra; Brown v. Barnes,* 93 Ala 58; 1 Freeman on Judgments, §§ 71, 72.

In this case a personal judgment by default was rendered against the defendant, as distinct as one could have been rendered against her in a suit on a promissory note on personal service. Any effort to make it appear that the court did not intend to pronounce this judgment is, necessarily, futile. There is no rule of law to justify or authorize an appellate court to hold that a lower court did not intend to do what its solemn adjudication in plain terms says it did do. But the rule of construction is exactly the contrary,—to presume the court intended to do what its order plainly declares it did do. The proceeding to correct this judgment, if sanctioned, would be to allow the court below to revise its own judgment, to modify it so as to make it express something which the court did not pronounce, and, really, to expunge from the record a judgment it did render, which was erroneous, and substitute therefor another and very different judgment. The scope and extent of the statute of amendment of judgments is to "amend any clerical error, mistake in the calculation of interest, or other mistake of the clerk, when there is sufficient matter apparent on the record or entries of the court to amended by."—Code, §§ 3334, 3337; *Tippins v. Peters,* 103 Ala. 196; *Brown v. Barnes, supra.*

We need not notice the other grounds urged against the amendment of this judgment. Whether they are well taken or not cannot affect the result, since the judgment as rendered is one, as we have seen, incapable of amendment *nunc pro tunc,* in the manner proposed, without reference to these other objections.

The judgment of the lower court will be reversed, and one will be here rendered dismissing said motion out of this court, and the court below, at the cost of the appellee.

Reversed and rendered.

[Wilmerding v. The Corbin Banking Co.]

No. 579.—In this case between the same parties, re-lating to the same judgment, the defendant moved the court to set aside and annul the judgment rendered, on grounds set out in the motion therefor. Attached to her motion, and as part thereof, she exhibited the affi-davit for attachment, bond, writ, complaint and judg-ment rendered in the cause. The grounds on which she based her motion, amongst others, were that said judg-ment is a nullity, being void on its face; because she had no notice of the issuance and levy of said attachment; that the attachment was issued in a partnership name, without setting out the individual names of the part-ners, as they are set out in the attachment bond, and because the court had no jurisdiction of the subject matter or parties, or either of them, in said cause.

During the pendency of this motion, and before it was heard, the plaintiff moved the court to amend said original judgment in the cause, *nunc pro tunc*, in a man-ner, if proper to be allowed, and if allowed, to cure the defects in said original judgment, which motion was first entertained by the court, and on trial thereof, said judgment was accordingly amended. That is the pro-ceeding in the foregoing case No. 578, which we have just considered. The motion in this case was after-wards tried and denied. An appeal was taken from the judgment of the court rendered on the trial of each of said motions, and on separate transcripts were here submitted together, to be disposed of at the same time.

Section 531 of the present Code, (section 2936 of the Code of 1886), provides that "when an attachment is sued out against a non-resident of the State, the writ shall be returned to the clerk of the court as soon as lev-ied upon the property of the defendant, and thereupon the clerk shall cause a *notice of the attachment and levy on the defendant's property* to be advertised once a week for three successive weeks, in some newspaper, a copy of which *must be sent by mail to the defendant, if his residence is known or can be ascertained;* and if such publication *is perfected* twenty days before the next term of the court, the case shall stand for trial at that term; otherwise at the succeeding term, or any other

term, *after the perfection of such publication,* twenty days prior thereto." The italicized parts of the above section are ours, for purposes that will appear. The judgment entry of this statutory notice as recited is: "And it being further shown to the court that the order of publication heretofore made in this case, *notifying and requiring the defendant to appear and plead to or demur to the plaintiff's complaint* in this case was duly published in the 'News Reporter,' a newspaper published in Talladega county, Alabama, for four consecutive weeks, commencing on the 14th September, 1895, and that *a copy of said publication was forwarded by mail to the place of residence of said defendant,* and said defendant being now called, makes default, it is therefore considered by the court, on sworn proof submitted to the court, that the plaintiff have and recover of the defendant the sum of $187.65, the damages claimed in this complaint, as well as all the costs of this case, for which let execution issue." Then follows an order that all the right, title and interest of the defendant in and to the lands levied on under and by virtue of said attachment, be condemned and sold to the satisfaction of said judgment for damages and costs; and the clerk was instructed to issue to the sheriff of the county a writ of *venditioni exponas,* ordering him to sell the right, title and interest of the defendant in and to the said lands, and apply the proceeds of sale to the satisfaction of said judgment for damages and costs. (The italics in this entry are ours).

How far the publication is made, according to the recital in the judgment entry, falls short of the one required by the foregoing statute, the italicized parts of the statute and the judgment entry make clear. It does not appear from the recital in the judgment that any notice of the attachment and levy, as prescribed by the statute, were ever made or mailed to the defendant, but that a notice was published notifying defendant to appear and plead to or demur to plaintiff's complaint, and that a copy of such notice without being addressed to defendant, was sent to her place of residence, which appears to have been Brook-

[Wilmerding v. The Corbin Banking Co.]

lyn, New York. From its mailing and address any other person in that great city might have claimed the paper as well as the defendant. It was an estray without an owner to lay claim, and we cannot presume that it reached the defendant. So far, then, as for what the notice contained and its mailing to defendant, the statute requiring the notice and mailing was in no sense complied with. In law it signified no more than if no notice of any character had been attempted to be given. What followed, therefore, in the way of a personal judgment against defendant, and the order of condemnation of her land by sale for the payment of the same, was done without any notice to defendant, and we have presented a case where the property of a non-resident defendant was levied on and sold without notice to her to appear and object to its condemnation,—a purely *ex parte* proceeding.

The question arises whether or not the notice required by the statute of this State in an attachment proceeding is jurisdictional, in the sense that without such notice the court is without authority to render judgment against the defendant and enter an order condemning her lands levied on for the payment of the same.

Some adjudications, including that of the Supreme Court of the United States, hold as the States have power over all property within their territory, that in a proceeding purely *in rem*, as they hold a levy on property of a non-resident defendant in an attachment suit to be, a State court has jurisdiction, when the *res* is brought into the power of the court by seizure under its process and its authority is complete over the subject matter; and some of these courts go to the length of holding that the court may order the sale of the property of a non-resident defendant in attachment even without sufficient or any publication of notice. Mr. Drake, in his work on Attachments, classes Vermont, New York, Ohio, Missouri and Iowa, and the Supreme Court of the United States, as courts holding to this view; whereas, the court of Maryland, Illinois, Wisconsin, Nebraska and Michigan are classed as holding to the contrary view,—that a judgment rendered with-

out notice, personal or constructive, to the defendant, or appearance by him, is wholly void, though property be attached.—Drake on Attachments, § 448.

In a case of recent impression in this court, we took • the view held by the latter class of States.—*Pullman Palace Car Co. v. Harrison,* 122 Ala. 149. In that case we said: "The remedy by attachment was unknown at the common law, and derives its existence from statutory enactment; and in consideration of its harshness and extraordinary character courts are generally, in the absence of any statutory provision regulating their construction, inclined to construe the statutory provisions creating it strictly, in favor of those against whom it may be employed. And on account of its origin, the jurisdiction of the courts invoked to enforce this remedy is placed upon the same footing with courts of special or limited jurisdiction, with no presumptions in favor of their jurisdiction in cases arising under the attachment laws."

In *Haywood v. Collins,* 60 Ill. 328, it is said: "The general jurisdiction of the circuit courts is over all matters and suits at common law and in chancery. When acting within the scope of its general powers, a circuit court is a court of superior jurisdiction. The rule is that nothing shall be intended to be out of the jurisdiction of a superior court, but that which specially appears to be so.—*Peacock v. Bell,* 1 Saund. 69. But when a court exercises a special statutory and extraordinary power, it stands upon the same ground and is governed by the same rules as courts of limited and inferior jurisdiction. The rule, then, is that nothing shall be intended to be within the jurisdiction but that which is expressly so alleged. In proceedings by attachment, is the circuit court acting within the scope of its general powers, or is it exercising a special statutory power? It will not be contended that, at common law, this summary and extraordinary remedy could be pursued. It exists and is conferred alone by statute, and is in derogation of common law. * * * When there is no personal service, the statute requires that there must be

notice by publication. This is as essential to jurisdiction as the issue of the writ and the levy upon property." *Clark v. Bryan*, 16 Md. 171; *Anderson v. Coburn*, 27 Wis. 558; *Wescott v. Archer*, 12 Neb. 345; *King v. Harrington*, 14 Mich. 532; *Miller v. Babcock*, 29 Mich. 526; 1 Wapple on Attachm., 603; Wade on Attachm., § 38; Shinn on Attachm., § 127.

These principles seem to necessarily follow from our Declaration of Rights, (Art. I § 7), providing that no person shall "be deprived of his life, liberty or property, but by due process of law." "Due process of law implies the right of the person affected thereby to be present before the tribunal which pronounces judgment upon the question of life, liberty or property, in its most comprehensive sense; to be heard, by testimony or otherwise, and to have the right of controverting, by proof, every material fact which bears upon the question of right in the matter involved. If any question of fact or liability be conclusively presumed against him, this is not due process of law."—*Zeigler v. S. & N. R. R. Co*, 58 Ala. 594; *Wilburn v. McCalley*, 63 Ala. 436, 443.

To authorize a judgment of condemnation and sale of the property of a non-resident, levied on by attachment, a statute of this State, quoted above, has prescribed a notice to be given to defendant by publication, before further proceedings shall be had in the cause. Code, § 531 (2936). It does not appear that this notice as required by statute was ever given. We are constrained to hold, that the judgment of condemnation was without due process of law and is wholly void on its face, and the court below should have so declared. A judgment will be here rendered, reversing the judgment below, and vacating and annulling the original judgment against the defendant, and the order of sale of her property in said attachment proceedings.

Reversed and rendered.