128 So.2d 516

**Billie Gail Negron BUSBY**

v.

**Lela Echols PIERSON et al.**

6 Div. 487.

Supreme Court of Alabama.

Jan. 12, 1961.

Rehearing Granted March 30, 1961.

**60**

Corretti & Newsom, Birmingham, for appellant.

Morgan & Shores, Birmingham, Janie L. Ellzey, (for guardian ad litem) and A. H. Nichols and J. L. Drennen, Birmingham, for appellees.

STAKELY, Justice.

Billie Gail Negron Busby (appellant) filed a bill to quiet title in rem to certain real estate located in Jefferson County. Lela Echols Pierson and others (appellees), include the heirs, devisees and next of kin of L. W. Mann, deceased, and A. T. Echols, deceased, and "any and all persons in the world claiming any right, title, interest, lien or encumbrance upon" the property in question. A guardian ad litem was appointed to represent the interests of Peggy Light, a minor, and all unknown parties who are infants or persons of unsound mind.

The land in question is part of a six acre tract. The conflicting claims at issue in the litigation result from the following situation. In 1903 J. T. and Alice D. Shugart conveyed the tract to A. T. Echols. A. T. Echols, who lived on this tract in a cabin with his family, died intestate in 1917. It appears that no administration proceedings were had on his estate. In 1923 the widow of A. T. Echols, Hattie Echols, who died in 1958, conveyed the tract by deed to L. W. Mann. In 1930 the interest sold to Mann passed to the State by virtue of a tax sale for failure to pay 1929 taxes. In 1945 the State conveyed its rights and interest, without warranty or covenant, to William Negron, who in 1954 conveyed his interest in approximately five of the six acres to his daughter Billie Gail Negron Busby, complainant below and appellant here.

Appellant's position is that she holds a fee-simple title to the tract, free of liens and encumbrances, and is in possession of the land. The appellees, some of whom were the children of A. T. Echols and Hattie Echols at the time of his death and some of whom are the children of R. Harvey Echols, a son of A. T. Echols and Hattie Echols, who died after the death of A. T. Echols, on the other hand, contend that under the Alabama homestead statutes in effect at the death of A. T. Echols, §§ 4196 and 4198, Code of 1907, the widow Hattie Echols took only a life interest, with remainder in the children and grandchildren of the heretofore deceased A. T. Echols, that the interest successively conveyed, from Hattie Echols to the present appellant, was but the life estate of the widow Echols, that this life estate expired upon the death of Hattie Echols in 1958, that the property in question is now that of the appellees by virtue of the remainder interest.

The appellees filed a cross-bill to have the title quieted in their favor and by amendment to the cross-bill, sought relief in the form of a sale for division.

On November 19, 1958, a decree was entered by the court quieting title to the real estate in favor of appellant and dismissing the cross-bill. On December 19, 1958, the appellees filed an application for rehearing, which was presented to the trial court on that date. On the same date the trial court issued an order setting hearing for January 16, 1959, and continuing the case until that time. On April 7, 1959, the trial court granted the application for rehearing. There is no order or decree continuing the cause or retaining jurisdiction after January 16 that appears in the original record of the proceedings. On May 13, 1959 the appellees filed a motion for resubmission. On August 18, 1959 the trial court entered a final decree which purports to quiet title to the real estate in favor of the appellees.

It is from this decree that the appellant has appealed.

The guardian ad litem has moved to dismiss the appeal on the following grounds, in substance: (1) that the failure of the appellant to insist on any of the particular errors assigned constitutes a waiver of all the assignments, and (2) that the failure of the appellant to serve the guardian ad litem with a copy of the assignments of error requires dismissal of the appeal.

For reasons which we see no need to set forth, we do not think well of the first ground of the motion, but do consider that the second ground is good. Since we shall undertake to show that the final decree which vests title to the real estate in the appellees who are the children of A. T. Echols and Hattie Echols or their descendants, should be affirmed, we see no point in granting the motion to dismiss the appeal. The minor Peggy Light is one of the heirs of A. T. Echols and Hattie Echols.

In her original brief appellant, apparently in relation to her assignments of error number 2, 7, 10 and 11, attacks the trial court's decree of April 7, 1959, granting the application for rehearing on the ground that the cause had by that date become discontinued and that the decree was thus rendered without jurisdiction. Appellant points out in brief correctly that the original record is devoid of any order continuing the cause or retaining jurisdiction in the trial court after January 16, 1959.

The transcript was filed in this court by appellant on December 9, 1959. On January 26, 1960, the trial judge entered a "Decree Nunc Pro Tunc," which on the direction of the trial judge was certified to this Court as a "supplemental transcript" and filed in this Court on January 27, 1960. This nunc pro tunc decree, contained in the supplemental transcript, orders in substance the entering of a continuance, effective January 16, 1959, of the cause and a retention of jurisdiction until January 23, 1959, and, the taking of the cause under advisement and submission on its merits, effective January 23, 1959. The record is ordered to be amended accordingly and the supplemental transcript containing the decree to be filed in this Court. If this decree is effective, it will serve to supply the fatal omissions in the original transcript which, appellant contends, caused a discontinuance and consequently a loss of jurisdiction in the trial court. For purposes of the present assignment of error, the decree of April 7 would be thus valid.

Appellant has filed a motion to strike the supplemental transcript and a supporting brief.

Title 7, § 567, Code of 1940 provides that:

> "The circuit courts * * * may, at any time within three years after the rendition of final judgment, upon the application of either party, amend any clerical error, mistake in the calculation of interest, or other mistake of the clerk or register, and may direct the writing up of any judgment, when the order for judgment was made at a previous time and the clerk or register had failed at such previous time to enter such judgment on the minutes of the court, when there is sufficient matter apparent on the record or entries of the court to amend by * * *."

Appellant contends that the quoted statutory provision does not authorize the nunc pro tunc decree in the instant case.

It appears from the nunc pro tunc decree itself that upon the filing of the appellees' application for rehearing on December 19, 1958, the trial court on that date continued the application to January 23, 1959.

> "and through inadvertence * * * [the] Court failed to make its written order so continuing said Application * * * but that its notes and records show that such order was made by * * * [the] Court and that on January 23, 1959 * * * [the] Court took the Application for Re-Hearing under submission and * * * al-

lowed ten days in which to file the necessary transcript and brief * * * and thereafter allowed * * * ten days within which to reply and * * counsel for both parties did file their respective briefs * * * and * * [the] Court did keep said matter under submission and due consideration until its final decree rendered on April 7, 1959 * * *."

This court has said that "[N]unc pro tunc amendments should never be the means of modifying or enlarging a judgment so that it would express something which the court did not pronounce, even though such amendment embraced matters that should have been clearly pronounced." Tombrello Coal Co. v. Fortenberry, 248 Ala. 640, 642, 29 So.2d 125, 126. This court in Gaston v. Reconstruction Finance Corporation, 237 Ala. 111, 113, 185 So. 893, also said: In other words nunc pro tunc amendments are to make the record "show what the judicial action really was * * *." Wilmerding v. Corbin Banking Co., 126 Ala. 268, 273, 28 So. 640, 641.

We think the instant situation comes within the principles of the above-quoted cases. The effect of the nunc pro tunc decree here in question is not to amend or change a judgment, or to attempt to do something that was not actually done at the time by the trial court, but merely to place formally on the record a decree as it was actually pronounced or rendered by the court at the appropriate time and which was omitted from the original record only through error or oversight. We do not think it material whether the omission was the "fault" of the clerk of the court or of the trial judge himself. "Clerical errors are not those alone which the clerk makes. They include all such, being matters of record, as intervene in the progress of a cause, whether committed by the court or the counsel, to which the judicial sanction or discretion cannot reasonably be said to have been applied." Ford v. Tinchant; 49 Ala. 567, 570; Capps v. Norden, 261 Ala. 676; 75 So.2d 915; Wilder v. Bush, 201 Ala.

21, 75 So. 143. "Amendment nunc pro tunc is available to correct a clerical error of the judge, as well as that of the clerk of the court." Tombrello Coal Co. v. Fortenberry, supra [248 Ala. 640, 29 So.2d 126].

Appellant argues that the supplemental record should not be considered on the ground that under Tit. 7, § 827(1a), "if no objections (to the record) are filed within * * * ten (10) days the transcript shall be conclusively presumed to be correct."

Sections 827(1) through 827(6), Title 7, 1955 Cumulative Pocket Part, Code of 1940, are all part of or amendments to Act No. 461, Gen.Acts 1943, p. 423 et seq. Section 827(1a) was added by amendment, Gen. Acts 1951, p. 1528, § 2. The title to the original 1943 Act is as follows:

"An Act to abolish bills of exception in the circuit court and courts of like jurisdiction and all other courts of Record having a full time Court Reporter and from which appeal lies directly to the Court of Appeals or the Supreme Court of Alabama *in cases at law,* and to provide for the evidence to be transcribed and made a part of the record and for assignments of error on the record." [Emphasis added.]

Thus § 827(1) begins, "Bills of exception in the trial of cases at law in the circuit court, etc."

In Garrett v. Oddo, 261 Ala. 172, 174, 73 So.2d 761, 763, this Court said that § 827(3), "does not apply to equity cases under the terms of the Act of June 10, 1953, Acts 1953, page 122, Act No. 80." The 1953 Act rewrote § 827(3). Smith v. Bank of Blountsville, 262 Ala. 65, 77 So.2d 357.

What is true for § 827(3) should also be true for § 827(1a), as part of the same overall statute. Accordingly as stated the foregoing portion of § 827(1a) does not apply to suits in equity.

We note too that "an appeal does not prevent the trial court from perfecting its record for use on appeal and that court

**64**

alone has such authority." Johnson v. Bryars, 264 Ala. 243, 247, 86 So.2d 371, 375; Nolan v. Moore, 254 Ala. 74, 46 So.2d 825.

We call attention to Equity Rule 63, Code 1940, Tit. 7 Appendix, which counsel do not mention so far as we are aware. This rule is as follows:

"Clerical mistakes in decrees, orders, or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party after such notice, if any, as the court orders."

In Ex parte Sharp, 259 Ala. 652, 68 So.2d 545, 547, we said that, "Under Equity Rule 63, there is no power to correct judicial errors." In Capps v. Norden, supra [261 Ala. 676, 75 So.2d 920], we pointed out that under Equity Rule 63 clerical errors committed by the court can be corrected "when there is sufficient matter apparent on the record or entries of the court to amend by." In other words, we reach the same result whether it be under § 567, Title 7, Code of 1940, or under Equity Rule 63.

Assignments of error 1, 2, 4, 7, 10 and 11 deal with the supposed error of the trial court in granting the rehearing, which ultimately resulted in the decree in favor of the appellees. It is apparently to these assignments that appellant refers when she contends in brief that, "It is clear from examining the record in this case that the appellee did not carry the burden of proof, insofar as establishing that the property which is the subject of this suit was the homestead of A. T. Echols." By this contention we understand appellant to mean that because appellee failed to carry the burden of proof on the merits of the case, the first decree, that of November 19, 1958, was just and proper and that therefore it was error for the trial court to grant the rehearing.

In her bill of complaint appellant has alleged ownership of the land in question. This is denied in the appellees' answer. This Court has pointed out that in a statutory bill to quiet title it is not necessary that the source of complainant's title or claim be set out, and that such allegation is surplusage, but that "an allegation of ownership, which is denied in the answer, places on complainant the burden of proving ownership in addition to peaceable possession." Wylie v. Lewis, 263 Ala. 522, 523, 83 So.2d 346, 347; Motley v. Crumpton, 265 Ala. 565, 93 So.2d 413.

The controversy as to the rights and title of the respective parties turns in the main on the provisions of our homestead laws. The controlling statutes are those in force at the time of the death of the husband, A. T. Echols, in this case the statutes being §§ 4196 and 4198, Code of 1907. Compton v. Cook, 259 Ala. 256, 66 So.2d 176. The relevant provisions are:

"The homestead of any resident of this state, leaving surviving him at his death a widow and minor child or children, or either, with the improvements and appurtenances not exceeding in value two thousand dollars, and in area one hundred and sixty acres, shall be exempt from administration and the payment of the debts * * * and the rents and profits of such homestead, * * * if there be both widow and minor child or children, * * * [shall enure] to their equal benefit during the life of the widow and the minority of the child or children. Such homestead may be retained by the widow or minor child or children, until it is ascertained whether the estate is solvent or insolvent; and if the estate is insolvent, it shall vest in them absolutely, and shall not be sold or partitioned by order of any court until the death of the widow and the youngest child is of age, except by order of the chancery court for reinvestment with the consent of the widow in writing if living." (§ 4196.)

"When the homestead set apart to the widow and minor child or children, or

either, constitutes all the real estate owned in this state by the decedent at the time of his death, the title of such homestead vests absolutely in them, whether there be administration on the estate of the decedent or not; but the title of the homestead shall not vest absolutely in them as against the other heirs of decedent until it is so set apart and until it is judicially determined that it is all the real estate owned by the decedent, and that it is not of greater value than two thousand dollars; but as against the creditors of decedent, the title of the homestead will be presumed to be absolute until it is judicially determined that it is not all of the real estate left by decedent, and that it is of greater value than two thousand dollars, and the homestead secured hereby shall be held and governed as in section 4196." (§ 4198.)

Since it was the burden of the appellant to prove her ownership, and since appellant's ownership if any is derived from that of the widow Hattie Echols, it was incumbent on appellant to show that under or in spite of the quoted statutory provisions the widow took more than a mere life interest after the death of her husband.

The evidence was taken ore tenus in the trial court. We cannot attempt to retry the cause or to resolve any conflicts in the evidence in this court. Without trying to set forth all the testimony in detail, we think that there was sufficient evidence from which the trial court could resolve the question of ownership against the appellant.

It appears to be undisputed that the land in question is less than 160 acres. There was testimony by one witness that the value of the land was but $250 and by another that the total value was about $2,000. There appears no evidence that homestead exemption proceedings or administration or insolvency proceedings were had. There was testimony by one of appellant's witnesses, as well as by appellee Lela Echols Pierson, to the effect that A. T.

Echols was living on the land in question at the time of his death. There is no showing that he had abandoned the land as his homestead.

There was some evidence of "talk" that Hattie Echols was married to a man named Cheek in 1892 and testimony that A. T. Echols had been previously married and that about 1917 "some woman other than his wife", whose status is not clear from the record, was living with him. The presumption is, of course, that the last marriage, that of Hattie and A. T. Echols, was valid. Jones v. Case, 266 Ala. 498, 97 So. 2d 816. We see nothing in the record which necessarily rebutted that presumption.

We do not consider that the effect of this evidence is such as to require us to hold that the appellant has necessarily proven that the land in question was not the homestead of A. T. Echols or that under the homestead statute the widow of A. T. Echols and the source of appellant's supposed title, took more than a mere life interest, or that the trial court committed reversible error in granting the rehearing.

Appellant further contends that the trial court erred in not allowing appellant by way of a lien any amount for improvements made by her and her father on the land in question. There was evidence that the improvements consisted of a house of approximately $3,000 value. The general rule has been that a holder of a life interest is not entitled to reimbursement as against the remaindermen or reversioners. "The reason given for the rule is that the life tenant does not hold adversely to the remainderman or reversioner, and must therefore be held to have made improvements merely with a view to enjoying them so long as the life estate continued, or to have intended them for the benefit of the remainderman." Sumner v. Bingham, 210 Ala. 446, 448, 98 So. 294. But where the holder of the life interest has no reason to believe his interest to be so limited, and reasonably considers himself the owner of the full fee, we can-

not say as a matter of law that he has made the improvements other than for the exclusive benefit of himself. It is apparent that the principles under which a party is given an allowance for improvements are grounded on equitable considerations having to do with the prevention of unjust enrichment. In the usual situation involving a life tenant who makes improvements, the enrichment of the remainderman or reversioner cannot be called unjust, for the life tenant has made the improvements voluntarily and with open eyes. In the case at bar we see nothing sufficient as a matter of law to have opened the eyes of the appellant. To deny the allowance to the appellant would be to enrich unjustly the appellees.

In the Sumner case, supra, we qualified the general rule by pointing out that in that case there was "no averment that complainant claimed more than a life estate * * *". The view which we here express is supported in principle by the following cases: Lee v. Menefield, 249 Ala. 407, 31 So.2d 581; Porter v. Henderson, 203 Ala. 312, 313, 82 So. 668; McDaniel v. Louisville & N. R. Co., 155 Ala. 553, 46 So. 981, 983. In these cases this court in effect approved allowances for improvements made in good faith by persons holding a lesser title without knowledge of the existence of the superior title. As we said in the McDaniel case, supra, "It is not a question of superiority of title, but purely one of good faith in the claim of ownership and in the erection of improvements." We think, therefore, that the court was in error in not allowing a lien in favor of the appellant for reasonable expenditures made by her or her father for improvements on the property.

Affirmed in part and in part reversed and remanded.

LIVINGSTON, C. J., and LAWSON and MERRILL, JJ., concur.

### On Application for Rehearing

Peggy Light, a minor, takes the position through her guardian ad litem that the opinion of this court is inconsistent in holding that the motion made by the guardian ad litem to dismiss the appeal is good on one ground, but would not be considered because of the ultimate holding that the appellees, who include Peggy Light, are the owners of the property. We concede the inconsistency and grant the rehearing as to the minor, Peggy Light. We do not see how the dismissal of the appeal as to Peggy Light can affect injuriously the other appellees, as we shall show. McMichael v. Thomas, 164 La. 233, 113 So. 828; 5 C.J.S. Appeal and Error § 1384, p. 506; 4 C.J., p. 605; Crawfordsville Trust Co. v. Ramsey, 55 Ind. App. 40, 100 N.E. 1049, 102 N.E. 282.

A lien to the appellant for improvements was denied by the lower court but this court decided on appeal that such a lien should be allowed. Obviously, if the appeal had been dismissed as to Peggy Light, then there would be no opportunity or occasion for this court to allow the lien on the interest in the property of Peggy Light.

The record in the case is silent as to service of a copy of the assignment of errors upon the guardian ad litem. This is clearly a violation of Supreme Court Rule 1, Code 1940, Tit. 7 Appendix. Edge v. Bice, 263 Ala. 273, 82 So.2d 252; Department of Industrial Relations v. Simms, 39 Ala.App. 525, 104 So.2d 782; Jackson v. Park, 39 Ala.App. 138, 95 So.2d 815. In the instant case, there was a motion by the guardian ad litem to dismiss the appeal on the ground, among other grounds, that a copy of the assignment of errors was not served upon the guardian ad litem. The motion was sworn to. There is no controverting affidavit in the record. Edge v. Bice, supra; Department of Industrial Relations v. Simms, supra. The case was submitted to this court both on the motion to dismiss and on the merits.

In determining the amount of the lien for improvements, the court will consider the extent of the interest of Peggy Light in the property as found by the court and will establish no lien on the interest

of Peggy Light, but will establish the lien for improvements on the interest of the remaining owners of the property as found by the court, the lien to be in an amount which is proportionate between the extent of such remaining interests and the reasonable cost of the improvement. For example, by way of illustration, if the court has determined that Peggy Light has a $\frac{1}{20}$ interest in the property, then the lien on the remaining interests shall be $\frac{19}{20}$ of the reasonable cost of the improvements. In order that there be no uncertainty as to the title, we call attention to the fact, as we understand the situation, that this proceeding is a statutory bill to quiet title in rem and by the procedure under the statutes (§§ 1116–1132, Tit. 7, Code of 1940), there is no minor or person of unsound mind, other than Peggy Light, who has an interest in the property.

Opinion extended, application for rehearing as to Peggy Light is granted. Appeal dismissed as to Peggy Light.